73142, 73143. KEM MANUFACTURING CORPORATION
v. SANT (two cases).
73155. SANT v. KEM MANUFACTURING CORPORATION.
(355 SE2d 437)

POPE, Judge.

Plaintiff was employed by defendant, Kem Manufacturing Corporation, a manufacturer and seller of speciality chemicals, from April 1973 to November 1980. At the time the employment relationship ended, plaintiff held a high-level managerial position. In March 1977, under the terms of a "Share Unit Agreement," plaintiff was awarded 2,500 "share units" which matured in March of 1981. The share unit agreement provided, however, that plaintiff was not entitled to receive payment for his share units if he voluntarily terminated the employment relationship before December 28, 1980. The parties also entered into an employment contract, which made plaintiff's employment contingent on his observing certain restrictive covenants during the term of his employment and for a period of eighteen months thereafter.

In November of 1980 Mr. Don Hall, defendant's general manager, informed plaintiff that he was being relieved of his managerial duties with the company. Following further discussion, plaintiff submitted a letter of resignation. Although defendant disputes plaintiff's contention that defendant's actions were, in effect, a termination, defendant's corporate officials testified in their depositions that they expected plaintiff to resign upon learning of his demotion.

During the November 1980 meeting, Mr. Hall presented plaintiff with a "Settlement Agreement," the terms of which form the basis for the present controversy. This settlement agreement provided, inter alia, that plaintiff would be paid $40,000 in 13 monthly installments "for the redefining and reconfirming of Sant's obligations and covenants to Kem which are to continue after the date of this agreement . . . and for the settlement and compromise of any and all claims and causes of action of any and all kinds which Sant might have against Kem, whenever incurred and for whatever reason, including, but not limited to, salary, commissions, overrides, reimbursement of expenses, severance pay, monies which might be due under the share unit plan,

and all other employee benefits." These payments were expressly conditioned on plaintiff's observing certain restrictive covenants, including a non-compete covenant, a non-disclosure covenant and a covenant against pirating defendant's employees. The agreement also contained general release language and a severability clause.

Plaintiff subsequently accepted a position as a zone sales manager with United Laboratories, Inc., a competitor of defendant. There was some overlap between the states included in plaintiff's zone and those in which he was prohibited from selling or soliciting orders for speciality chemicals under the terms of the settlement agreement. Believing plaintiff had violated the terms of that agreement, defendant ceased making payments to plaintiff in August 1981.

Plaintiff filed suit against defendant on February 5, 1982, alleging, inter alia, that the restrictive covenants contained in the agreement were overly broad, unconscionable and unenforceable. Defendant answered and counterclaimed, alleging that plaintiff had breached the terms of the settlement agreement, had breached his fiduciary duty to defendant, had tortiously interfered with competitive or economic advantages of defendant, had tortiously interfered with defendant's business interests, had engaged in unfair methods of competition and had conspired with United to destroy defendant's business.

Plaintiff filed a motion for summary judgment on his complaint and against defendant's counterclaim. In essence, plaintiff argued that the territorial restrictions contained in the non-compete restrictive covenant were overly broad because plaintiff had not performed services or had performed only limited services for defendant in some of the prohibited states and that the covenant was unreasonable because it prohibited plaintiff from selling speciality chemicals, although he was employed in a supervisory, not a sales, capacity for defendant. Plaintiff also argued that the covenant against diverting defendant's customers was unenforceable because it prohibited him from contacting customers with whom he had had no contact while employed by defendant. Plaintiff also contended that he was still entitled to the balance of payments under the settlement agreement because part of the consideration for the monies was his forebearance from instituting legal action against defendant for bonuses due to him and for the value of his share units.

After hearing oral argument, the trial court entered an order on September 6, 1985 granting plaintiff's motion for summary judgment and dismissing defendant's counterclaim with prejudice. Defendant was also ordered to pay plaintiff $26,500 plus prejudgment interest of $4,080.70 plus attorney fees of $3,975 and other costs and expenses of $3,152.41. Defendant filed a timely notice of appeal, case no. 73142. In order to enable the clerk to prepare the record on appeal, the trial court entered an order to open the seals on certain documents which

had been filed under seal with the court pursuant to a protective order. At that time it was discovered that the seal had never been broken on defendant's brief in opposition to plaintiff's motion for summary judgment. On February 21, 1986 the trial court entered an order vacating its September 6, 1985 order granting plaintiff summary judgment. On April 24, 1986 the trial court entered a new order granting plaintiff's motion for summary judgment and dismissing defendant's counterclaim. This order, however, did not specify the amount of prejudgment interest or award plaintiff attorney fees. Defendant filed a second notice of appeal, case no. 73143. Plaintiff filed a cross-appeal, case no. 73155.

1. Because defendant has filed two appeals on essentially the same issues, and because, as a general rule, no appeal will lie from an order or judgment that has been amended, modified or superseded by a subsequent order or judgment (see Division 8, infra), we hereby dismiss the appeal in case no. 74142. OCGA § 5-6-48 (b).

2. Defendant first argues that the case sub judice is controlled by *Sheppard v. Columbus Packaging Co.*, 146 Ga. App. 202 (1) (245 SE2d 887) (1978). In *Sheppard* the plaintiff argued that the restrictive covenants at issue therein were unenforceable because not limited in time and geographic area. Distinguishing the circumstances in *Sheppard*, in which plaintiff sought to recover deferred compensation, from those suits involving injunctions to prevent the violation of restrictive covenants not to engage in competition, this court held that "a provision of a contract which imposes as a condition to the recovery of benefits under a deferred compensation plan that the employee refrain from engaging in competitive employment is not violative of public policy as being in restraint of trade." Id. at 203.

Defendant argues that *Sheppard* is controlling here because the payments under the settlement agreement were in the nature of deferred compensation. We believe, however, that the critical inquiry under *Sheppard* is whether the restrictive covenant actually *precludes* the employee from engaging in the prohibited activity, or whether the covenant simply provides for the loss of rights or privileges if the employee violates the covenant. See *Shandor v. Wells Nat. Svc. Corp.*, 478 FSupp. 12 (3, 4) (N.D. Ga. 1979). Even a cursory reading of the agreement at issue in the present case clearly demonstrates that loss of benefits is not the only penalty plaintiff faces if he violates the restrictive covenants contained in paragraph 3. Paragraphs 5 and 6 specify liquidated damages which plaintiff must pay the defendant in the event he violates paragraph 3, and paragraph 7 provides that defendant can also seek injunctive relief for such violations. Defendant in fact sought such relief in its counter-

claim.[1] Under these facts we find that in the case sub judice plaintiff does not merely lose certain benefits if he violates the restrictive covenants contained in the settlement agreement, but that such covenants act as an absolute bar to plaintiff's right to engage in the prohibited activity. For this reason, we reject defendant's first enumeration of error.

3. Defendant next argues that the trial court erred in granting plaintiff's motion for summary judgment even if the non-compete restrictive covenants are partial restraints against trade and void, because the settlement agreement contains other valid, severable restrictive covenants such as a non-disclosure covenant. In the present case the agreement was drafted as follows: Paragraph 3 (a) (i) contained the non-compete covenant, paragraph (3) (a) (ii) contained the "diversion of customers or accounts" covenant, paragraph 3 (a) (iii) contained the non-disclosure covenant, paragraph (3) (b) (i) contained a prohibition against pirating defendant's employees, and subparagraphs (b) (ii), (b) (iii), (b) (iv) and (b) (v) provided that plaintiff could not wrongfully interfere with defendant's customers, defame defendant, use deceptive trade practices against defendant or use unfair competition against defendant.

The general rule in Georgia is that "[t]here can be no 'blue pencil theory' of severability of covenants not to compete even where there is a severability clause (cits.) . . . [T]his does not mean that [the non-disclosure provision] . . . must of necessity suffer the same fate as [the non-competition provision]. 'A claim for breach of covenant not to compete and one for wrongful disclosure and use of confidential information in violation of contract may be maintained separately and independently under the same or distinct provisions of the employment agreement.' [Cits.] This is also true of covenants not to interfere with employment contracts, i.e., by hiring away employees of one's former employer. [Cit.]" *Lane Co. v. Taylor*, 174 Ga. App. 356, 358-59 (330 SE2d 112) (1985).

A review of plaintiff's brief in support of his motion for summary judgment reveals that plaintiff did not specifically address the viability of either the non-disclosure provision or the prohibition against hiring away defendant's employees, although plaintiff did make a general statement that "paragraphs 3 thru 7 of the Settlement Agreement, and all other provisions which restrain trade, are null and void

---

[1] Because defendant has failed to raise any issue on appeal concerning its quest for injunctive relief, we deem it to be abandoned and not before this court for review. See, e.g., *Sierra Assoc. v. Continental &c. Trust Co.*, 169 Ga. App. 784 (4a) (315 SE2d 250) (1984). Since this court lacks jurisdiction over appeals involving claims for injunctive relief, out of an abundance of caution we also note that this issue is moot and nonreviewable because the period of time during which defendant could have obtained injunctive relief has expired. *Nasco, Inc. v. Gimbert*, 239 Ga. 675 (1) (238 SE2d 368) (1977).

and unenforceable." We note that "[t]he movant for summary judgment . . . has the burden to produce evidence which conclusively eliminates all issues in a case, even those issues upon which the opposing party . . . would have the trial burden. Moreover, the party opposing the motion is given the benefit of all reasonable doubts and favorable inferences which may be drawn from the evidence. Even though [the non-moving party's] evidence proves nothing or . . . the evidence is concededly 'in equipoise' does not carry the [moving party's] burden." (Citations and punctuation omitted.) Id. at 360.

The tests used to determine the validity of a non-competition and a non-disclosure provision are not the same. "Unlike general non-competition provisions . . . specific nondisclosure clauses bear no relation to territorial limitations and their reasonableness turns on factors of time and the nature of the business interest sought to be protected." *Durham v. Stand-By Labor of Ga.*, 230 Ga. 558, 563 (198 SE2d 145) (1973); *Lane Co.* at 359. The two important factors are "(1) whether the employer is attempting to protect confidential information relating to the business, such as trade secrets, methods of operation, names of customers, personnel data, and so on — even though the information does not rise to the stature of a trade secret; and (2) whether the restraint is reasonably related to the protection of the information." *Durham* at 564; *Lane Co.* at 359.

Here the contract prohibits the use of "any of Kem's confidential information and/or trade secrets, which includes, but is not limited to, business policies, sales methods, [and] sales techniques. . . ." In considering this paragraph, we are unable to say as a matter of law that this provision is void as a restraint of trade. The legitimacy of the need to maintain the confidentiality of such information is a question of fact whose resolution is for the jury. *Durham* at 564; *Lane Co.* at 359. "Because the record before us is not developed as to the issue of the reasonableness of the non-disclosure clause, we cannot determine whether the restraints on disclosure . . . are reasonably necessary for the protection of [Kem's] confidential business information." *Rollins Protective Svcs. Co. v. Palermo*, 249 Ga. 138, 142 (287 SE2d 546) (1982).

We note also that in its counterclaim defendant specifically averred that plaintiff had breached these non-disclosure provisions. "Since this was on motion for summary judgment, it was incumbent on [the moving party] to establish the absence of disclosure, or in short, that there was no disclosure of confidential information." *Lane Co.* at 359. Hence we find that summary judgment on this issue was improper and remand the case to the trial court for further consideration not inconsistent with this division.

4. In its third enumeration of error, defendant contends that, assuming that the restrictive covenant provisions are void, the trial

court erred in not striking down the payment provisions, which were expressly conditioned on plaintiff's observing said covenants. OCGA § 13-1-8 provides as follows: "(a) A contract may be either entire or severable. In an entire contract, the whole contract stands or falls together. In a severable contract, the failure of a distinct part does not void the remainder. (b) The character of the contract in such cases is determined by the intention of the parties." " ' "Where an instrument in writing, purporting to be a bilateral contract, contains mutual promises, which without more and when taken independently of certain subsidiary provisions in the instrument would render the instrument valid as a contract, such subsidiary provisions will not, *unless their terms imperatively demand it*, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument and thus render the instrument lacking in mutuality and void." (Cits.) "The rule is that where an agreement consists of a single promise, based on a single consideration, if either is illegal, the whole contract is void. But where the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and some only of the promises are illegal, the promises which are not illegal will be held to be valid." (Cit.)' [Cits.]" (Emphasis supplied.) *O. H. Carter Co. v. Buckner*, 160 Ga. App. 627, 628-29 (287 SE2d 636) (1981).

Our primary task then is to ascertain the intention of the parties. Although the parties included a severability clause and the contract contains valid, enforceable obligations other than the restrictive covenant provisions, we believe that the clear terms of the contract mandate a finding that the parties intended the payment provisions to be expressly conditioned on plaintiff's observance of the restrictive covenants contained in paragraph 3. The terms of the settlement agreement imperatively demand a finding that the parties did not intend for the payment provisions to be enforceable independently of plaintiff's observance of these covenants.

Because of our holding in Division 3, however, we do not believe this resolves the issue of whether plaintiff is entitled to the remaining payments under the contract. If the finder of fact concludes that the non-disclosure provision is valid and enforceable and that plaintiff has not breached this covenant, then payments under the contract would be proper. Thus, we reverse the trial court's award of monetary damages pending the resolution of its determination of those issues remaining in Division 2.

5. Defendant's next enumeration of error concerns the issue which is at the heart of this appeal — the validity of the non-compete restrictive covenants contained in paragraph 3 of the settlement agreement. Defendant argues that because the settlement agreement was executed incident to the *severance* of an employment relation-

ship, it was not "ancillary to employment," and thus the closer scrutiny given in such a case is not necessary. We disagree.

In order to classify an agreement containing a non-competition covenant, we consider certain factors to be determinative. Of these factors, we give primary importance to the relative bargaining power of the parties. "If it appears that [the employee's] bargaining capacity was not significantly greater than that of a mere employee, then the covenant should be treated like a covenant ancillary to an employment contract . . . ." *White v. Fletcher/Mayo/Assoc.*, 251 Ga. 203, 208 (303 SE2d 746) (1983); see also *Watson v. Waffle House*, 253 Ga. 671 (2) (324 SE2d 175) (1985); *Rash v. Toccoa Clinic Med. Assn.*, 253 Ga. 322 (2) (320 SE2d 170) (1984). Because the facts in the case sub judice suggest that the plaintiff, confronted with a termination, or at best a "demotion" situation, was in an inferior bargaining position, and since the covenants in question could seriously impair plaintiff's ability to earn a living, we find that the proper standard to be applied in determining the viability of the covenants in the instant case is that which is traditionally applied to restrictive covenants within employment contracts.

"A covenant not to compete, being in partial restraint of trade, is not favored in the law, and will be upheld only when strictly limited in time, territorial effect, the capacity in which the employee is prohibited from competing and when it is otherwise reasonable." *Beckman v. Cox Broadcasting Corp.*, 250 Ga. 127, 129 (296 SE2d 566) (1982). " 'Whether the restraints imposed by an employment contract are reasonable is a question of law for determination by the court.' [Cit.]" *Rollins Protective Svcs. v. Palermo*, supra at 139; see *Koger Properties v. Adams-Cates Co.*, 247 Ga. 68 (2) (274 SE2d 329) (1981).

The primary argument expounded by plaintiff in his brief in support of his motion for summary judgment is that the territorial limitations contained in the non-competition restriction are overly broad and thus void and unenforceable because they restrict his activities in states in which he did not actually perform services for defendant, and in states in which he performed very limited or minimal services for defendant. "If a prima facie showing is made that the moving party in summary judgment is entitled to judgment as a matter of law, the opposing party must come forward with rebuttal evidence at that time or suffer judgment against him. When a motion for summary judgment is made and supported by evidence outside the pleadings, an adverse party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or otherwise, *must set forth specific facts* showing that there is a genuine issue for trial." (Citations and punctuation omitted.) *Dunoco Dev. Corp. v. Ed Taylor Constr. Co.*, 178 Ga. App. 738 (344 SE2d 531) (1986). A careful review of the rather voluminous record in this case reveals that Kem has

failed to refute plaintiff's contentions, which were supported by affidavit and deposition testimony, by affidavit or otherwise; therefore, we find that the trial court was authorized to find that the plaintiff did not transact business in the entire area sought to be restricted. See *Rollins Protective Svcs.*, supra at 139-40. The rule is that "[a] contract enumerating numerous territories which are not necessary for the protection of legitimate business interests of the employer is not an enforceable contract. Such a contract is overly broad, and the result is that it is not enforceable in even the smallest area specified, though that smaller area would be a legitimate and enforceable restricted area standing alone." *Wulfhorst v. Hudgins & Co.*, 231 Ga. 170, 172 (200 SE2d 743) (1973).

Appellant also contends, without citing any supporting authority, that even if we should find the territorial restrictions overly broad, we should "blue pencil" them. We reject this argument as totally against the weight of authority in this state. The rule in Georgia is clear that we do not "blue pencil" in employment contract cases. *White v. Fletcher/Mayo/Assoc.*, supra at 206; *Durham v. Stand-by Labor of Ga.*, supra at 562; *Richard P. Rita Personnel Svcs. v. Kot*, 229 Ga. 314 (191 SE2d 79) (1972).

For the foregoing reasons, we hold that the trial court did not err in granting summary judgment to plaintiff on this issue.

6. Defendant next asserts the general argument that the trial court erred in granting summary judgment because plaintiff failed to meet his burden of showing no genuine issue of material fact. Having specifically addressed the propriety of the trial court's order as to the various issues presented on this appeal, we find in unnecessary to address this enumeration.

7. Defendant also argues that the trial court erred in dismissing its counterclaim as to its common law causes of action against plaintiff.

(a) Breach of Fiduciary Duty. Because the allegations of defendant's counterclaim were not sufficient to state a breach during the life of the agency relationship, the trial court did not err in dismissing defendant's counterclaim for breach of fiduciary duty. Cf. *Plymouth Record Corp. v. Books, Inc.*, 92 Ga. App. 753 (1) (90 SE2d 336) (1955); see also *Koch v. Cochran*, 251 Ga. 559 (307 SE2d 918) (1983); *Pope v. Kem Mfg. Corp.*, 249 Ga. 868 (1) (295 SE2d 290) (1982) (dealing with an existing agency relationship).

(b) Tortious Interference. Defendant next alleges that summary judgment was improper as to its claims for tortious interference because "discovery showed a substantial inference that Sant and United had undertaken a campaign to wilfully and wrongfully expropriate the customers and good will of Kem and to interfere with Kem's legitimate business interests." There is no doubt that Kem and United are

competitors. We are not persuaded that the facts in this case show more than this. Were we to hold otherwise, we believe that ordinary competition would be unfairly restricted.

(c) Defendant also argues that the evidence created a genuine issue of material fact as to its claim that plaintiff engaged in a civil conspiracy to destroy defendant's business. "A civil conspiracy has been defined as a combination between two or more persons to do some unlawful act which is a tort or else to do some lawful act by methods which constitute a tort. The averment of a conspiracy in the declaration does not ordinarily change the nature of the action nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully. Where damage results from an act which, if done by one alone, would not afford ground of action, the like act would not be rendered actionable because done by several in pursuance of a conspiracy. Thus, a conspiracy to effect what one has a legal right to accomplish is not actionable." (Citations and punctuation omitted). *Sofate of America v. Brown*, 171 Ga. App. 39, 40 (318 SE2d 771) (1984). Thus, because of our holdings in parts (a) and (b) of this division, we find that summary judgment was also proper as to defendant's claims alleging conspiracy.

(d) Since defendant concedes that the remaining counts of its counterclaim are dependent on our holdings on the above issues, we hold that summary judgment was properly granted as to the remaining counts of defendant's counterclaim, except as to its count alleging plaintiff's violation of the non-disclosure provision, which we addressed in Division 3.

8. Plaintiff's Cross-Appeal, No. 73155.

(a) Plaintiff contends that because the trial court found that he was entitled to payment under the terms of the contract, it erred in not also awarding him attorney fees in its order of April 24, 1986 (the second summary judgment order). However, because we have remanded this case to the trial court for a determination of monetary damages, if any, which plaintiff is entitled to recover (see Division 4, infra) we find it unnecessary to consider this enumeration, believing that the more provident course is to allow the trial court to consider this issue on remand and enter findings consistent with any future orders it may deem appropriate in this case.

(b) Plaintiff also urges us to reinstate the trial court's original order of September 6, 1985, should we find the second order invalid for any reason. This contention is without merit. The rule is that a notice of appeal does not act as a supersedeas until all trial costs are paid. *Duncan v. Ball*, 172 Ga. App. 750 (1) (324 SE2d 477) (1984). The docket sheet, which has been certified to us from the trial court, shows that the trial costs were not paid until approximately one

month following the entry of the *second* order. Thus, the trial court was not divested of jurisdiction by the filing of the original notice of appeal. Consequently, it was within the trial court's discretion to vacate the original order and to subsequently enter a new order on plaintiff's summary judgment motion. Compare *J. M. Clayton Co. v. Martin,* 177 Ga. App. 228 (1) (339 SE2d 280) (1985).

*Judgment affirmed in part; reversed in part and cases remanded in Nos. 73143 and 73155. Appeal dismissed in Case No. 73142. McMurray, P. J., and Carley, J., concur.*

DECIDED FEBRUARY 18, 1987 —
REHEARING DENIED MARCH 13, 1987 — ▉▉▉▉▉▉▉▉▉

*Charles M. Kidd,* for Kem Mfg.
*Paul A. Howell, Jr., Jamie M. Brownlee-Jordan,* for Sant.