**JANICE DOTY UNLIMITED, INC., Plaintiff,**

v.

**William J. STOECKER, Grace Stoecker, Defendants.**

**No. 87 C 9871.**

United States District Court, N.D. Illinois, E.D.

April 6, 1988.

Miriam F. Miquelon, Miquelon & Assoc., Chicago, Ill., for plaintiff.

Neal F. Thompson, Lord Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

This diversity case arises out of a contract between plaintiff Janice Doty Unlimited, d/b/a Nannys Unlimited ("Nannys") and defendants William J. and Grace M. Stoecker ("Stoeckers") for the placement and services of a domestic professional. The Stoeckers have filed a motion to dismiss for failure to state a claim upon which relief can be granted.[1] For the reasons set forth below, we deny that motion.

### Facts [2]

Nannys is a Georgia Corporation which specializes in placing domestic and child care help on a nationwide basis. In October 1986, Nannys and the Stoeckers entered into a Domestic Professional Placement Agreement ("Agreement"). Pursuant to the Agreement, Nannys agreed to provide the Stoeckers with domestic help for a one-year period, October 22, 1986 through October 22, 1987. The Agreement provided that the domestic help placed with the Stoeckers would be a Nannys' employee, and Nannys would provide the employee with health and life insurance and other usual employment benefits. Nannys would also make the employer's portion of the F.I.C.A. payment (social security tax). The fee for Nannys' services to the Stoeckers was a one-time non-refundable placement fee and a monthly fee of $2,400.00 for the length of the contract.

The Agreement also contained a provision which prohibits the Stoeckers from hiring the domestic professional placed by Nannys for "the rendering of Domestic Professional or related services" for a certain period of time.[3]

Pursuant to the Agreement, Nannys placed James Polcyn as a domestic with the Stoeckers. As a condition of Polcyn's employment with Nannys, Polcyn was required to execute an employment agreement. Polcyn orally agreed to execute the employment agreement. However, by the time Polcyn was placed with the Stoeckers he had not signed his employment agree-

---

1. Although the Stoeckers label this a motion to dismiss under Fed.R.Civ.P. 12(b)(6), it cannot be such a motion because a 12(b)(6) motion must be made before further pleading is permitted. Fed.R.Civ.P. 12(b). The Stoeckers filed their answer prior to filing this motion to dismiss. Accordingly, this motion is more properly considered a motion for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). The standard, however, is the same.

2. These facts are taken as true from the complaint for purposes of this motion.

3. This provision is contained in Paragraph 6 of the Agreement. Paragraph 6 provides the following:

    In view of the scope of services provided by Janis Doty Unlimited (Paragraph 1) and in order to protect the relationship created by this Agreement, and to protect Janis Doty Unlimited's ability to provide the services promised by this Agreement, the Client expressly agrees that he/she shall not enter into any agreement of employment or hire for the rendering of Domestic Professional or related services, with any of the Domestic Professionals placed with the Client. This restriction applies equally to all Domestic Professionals which were presented to the Client pursuant to the Retainer Agreement and which may be presented pursuant to paragraph 3 ("Replacements"). This restriction shall be binding upon the Client (and, by separate agreement, upon the Domestic Professional) at all times during the term of this Agreement and for a period of eighteen months thereafter. In the event of a breach of this provision of this Agreement, the Client acknowledges and agrees that Janis Doty Unlimited would suffer irreparable damages which would be difficult to quantify; therefore, Janis Doty Unlimited shall be entitled to injunctive relief from any court of competent jurisdiction. This reservation of right does not waive the right of Janis Doty Unlimited to pursue any and all other legal remedies, including a suit for damages.

ment. Nannys repeatedly requested Polcyn to sign his agreement, and he indicated that it would be signed. In the spring of 1987, William Stoecker contacted Nannys to discuss the possibility of "buying out" Polcyn's contract to enable Stoecker to employ Polcyn directly. Nannys set its buyout price at $18,000. Stoecker did not follow through with the buy-out.

After Stoecker's inquiries regarding Polcyn's "buy-out" price, Polcyn informed Nannys that he would not sign his employment contract. On May 12, 1987, Nannys sent Polcyn a letter demanding that Polcyn execute and return the employment agreement. On June 15, 1987, Nannys set a letter to Stoecker's agent George Wyler (at Stoecker's address) informing him that failure to return Polcyn's signed agreement would result in Polcyn's termination. On June 19, 1987, Nannys contacted George Wyler by telephone, and Wyler was again informed that it was imperative that Polcyn's signed contract be delivered immediately to Nannys. That same day, Nannys terminated Polcyn's employment for failure to return his employment contract.

On June 26, 1987, the Stoeckers terminated their Agreement with Nannys. The Stoeckers, however, continued to employ Polcyn as a domestic. Nannys subsequently brought this action with counts for breach of contract, tortious interference with contract and fraud.

### Failure to State a Claim

■ The Stoeckers contend that Paragraph 6 of the Agreement which prohibits them from hiring Polcyn until eighteen months after the termination of the Agreement is unenforceable. This, they contend, requires that all three counts (breach of contract, tortious interference and fraud) must be dismissed. We disagree. The Stoeckers erroneously contend that this covenant is common to all three counts. Neither the count for tortious interference

nor the count for fraud rely upon Paragraph 6. The count for tortious interference alleges that the Stoeckers tortiously interfered with the contract between Polcyn and Nannys. The count for fraud alleges that William Stoecker committed fraud when he intentionally misrepresented that he was no longer receiving Polcyn's services when he continued to employ Polcyn, and that Nannys relied upon this representation to its detriment. The enforceability of Paragraph 6 may be relevant to the equitable remedies that Nannys seeks under Counts II and III, it does not, however, affect its ability to recover damages. Accordingly, were we to find Count I fails to state a claim upon which relief can be granted, we would not dismiss Counts II and III.

### Count I

■ The Stoeckers contend that Count I fails to state a claim for breach of contract because Paragraph 6 of the Agreement, which prohibits the Stoeckers from hiring Polcyn, is unenforceable under Georgia law as an overly-broad non-competition clause ancillary to an employment contract.[4] Nannys disagrees and contends that the clause is not ancillary to an employment contract and that all cases cited by the Stoeckers are inapposite. Because Georgia law treats non-competition clauses ancillary to employment contracts different than other restrictive covenants, we must first determine whether the restrictive covenant at issue here is a non-competition clause ancillary to an employment contract.

First, we observe that this Agreement is clearly not the typical type of contract which contains a non-competition clause. In every breach of contract case cited by either party dealing with non-competition clauses ancillary to an employment contract, the lawsuit was between an "employer" and an "employee."[5] In the present

---

4. The Agreement provides that Georgia law shall be the governing law. Both parties agree that this provision applies.

5. *See, e.g., Merrill Lynch, Pierce, Fenner & S nith v. deLiniere*, 572 F.Supp. 246 (N.D.Ga.1983); *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558,

350 S.E.2d 425 (1986); *McNeal Group, Inc. v. Restivo*, 252 Ga. 112, 311 S.E.2d 831 (1984); *Orkin Exterminating Co. v. Walker*, 251 Ga. 536, 307 S.E.2d 914 (1983); *Singer v. Habif, Arogeti & Wynne, P.C.*, 250 Ga. 376, 297 S.E.2d 473 (1982); *Beckman v. Cox Broadcasting Corp.*, 250 Ga.

case, no one would consider the Stoeckers an "employee." Additionally, although Nannys may be considered an "employer" of Polcyn, it can in no way be considered an "employer" of the Stoeckers. If anything, this is a case of one "employer" suing another "employer" over the hiring of a mutual "employee," here, Polcyn. The parties have cited no cases that are at all on point.[6]

Although the Stoeckers have cited no authority to justify the application of employee/employer cases to the present situation, we will examine the policy rationales underlying the case law in this area to determine if it is at all useful to resolving this controversy. A traditional covenant not to compete would usually be present in a contract executed by an employee. The covenant would generally provide that once an employee has terminated his employment with his employer that he would not directly compete with the employer for a limited time and within a specified territory. Under Georgia law, a covenant not to compete as a partial restraint of trade is not favored in the law and will be upheld only when strictly limited in time, territorial effect, the capacity in which the employee is prohibited from competing and when it is otherwise reasonable. *Beckman v. Cox Broadcasting Corp.*, 250 Ga. 127, 296 S.E.2d 566, 568 (1982).

If a court finds that *any one* of the non-competition clauses, i.e. as to territory, time or capacity, is unenforceable because of indefiniteness, overbreadth or unreasonableness, the whole agreement must fail. *Jarrett v. Hamilton*, 179 Ga.App. 422, 346 S.E.2d 875, 876 (1986).[7] The theory behind this strict position of non-severability is set forth in the Georgia Supreme Court case which adopted this position:

We have given careful consideration to severance theory, and we decline to apply it.

Professor Harlan M. Blake in 73 Harv. L.Rev. 625 (February 1960) had this to say: "Courts and writers have engaged in hot debate over whether severance should ever be applied to an employee restraint. The argument against doing so is persuasive. For every covenant that finds its way to court, there are thousands which exercise an in terrorem effect on employees who respect their contractual obligations and on competitors who fear legal complications if they employ a covenantor, or who are anxious to maintain gentlemanly relations with their competitors. Thus, the mobility of untold members of employees is restricted by the intimidation of restrictions whose severity no court would sanction. If severance is generally applied, employers can fashion truly ominous covenants with confidence that they will be pared down and enforced when the facts of a particular case are not unreasonable. This smacks of having one's employee's cake, and eating it too."

There are some good reasons in support of the doctrine of severance. However, we conclude that those reasons are not of sufficient weight to offset those reasons for refusing to apply the doctrine. In short, we have weighed the "blue-pencil" doctrine in the balance, and found it wanting.

*Richard P. Rita Personnel Services v. Kot*, 229 Ga. 314, 191 S.E.2d 79, 81 (1972). Thus, a key policy behind Georgia's treatment of non-competition clauses ancillary to employment contracts is the idea of

127, 296 S.E.2d 566 (1982); *Pope v. Kem Manufacturing Corp.*, 249 Ga. 868, 295 S.E.2d 290 (1982); *Koger Properties v. Adams–Cates Co.*, 247 Ga. 68, 274 S.E.2d 329 (1981); *Uni–Worth Enterprises, Inc. v. Wilson*, 244 Ga. 636, 261 S.E.2d 572 (1979); *Nationwide Advertising Service, Inc. v. Thompson Recruitment Advertising*, 183 Ga.App. 678, 359 S.E.2d 737 (1987); *Kem Manufacturing Corp. v. Sant*, 182 Ga.Ap. 135, 355 S.E.2d 437 (1987).

6. It would seem that cases involving lawsuits between temporary employee agencies and their clients may be more on point. However, neither party has cited any such cases.

7. This doctrine only applies if a non-competition clause fails. The Stoeckers try to apply it to the failure of a remedy provision. Therefore, if we needed to reach this issue, we would reject the Stoeckers' argument that failure of the injunction clause in the Stoeckers' contract should trigger rejection of the entire contract.

avoiding contracts which make unnecessary and unjust restraints on trade.

A review of the clause at issue shows that it does restrain trade in a small sense. The Stoeckers are prohibited for a limited period of time from hiring as a domestic professional one particular class of individuals, that is, any individual placed by Nannys in their home as a domestic professional. In this case, the class consists of exactly one person, James Polcyn. Polcyn is prohibited for a limited period of time from working as a domestic professional for one possible employer, the Stoeckers. The clause, however, does not prohibit the Stoeckers from hiring Polcyn at all; it only prohibits his hiring for domestic or related services. Thus, Mr. Stoecker could hire Polcyn as an office messenger or secretary. Also, the clause at issue does not prohibit Polcyn from working for any other employer as a domestic professional. Despite these limited restraints on trade, we are not convinced the instant clause can be properly considered under Georgia case law concerning non-competition clauses ancillary to employment contracts.

In arriving at this conclusion, we are also influenced by a recent Georgia Court of Appeal case which analyzed the clause at issue in that case in terms of the relative bargaining power between the parties. *Kem Manufacturing Corp. v. Sant,* 182 Ga.App. 135, 355 S.E.2d 437, 444 (1987). The court held that if it appears that the restricted party's bargaining capacity was not significantly greater than that of a mere employee, then the covenant should be treated like a covenant ancillary to an employment contract. *Id.* We are hard pressed to conclude that the Stoeckers' bargaining power in this case was not significantly greater than a "mere employee." There is nothing to indicate that the instant agreement between the Stoeckers and Nannys was anything other than an arms-length transaction between two contracting parties. If anything, the Stoeckers *hired* Nannys to perform a service, the selection and placement of a domestic professional. As consideration for Nannys' services, the Stoeckers agreed to pay Nannys a certain amount of money and not to hire any domestic professional placed with them by Nannys as a domestic professional for a period of eighteen months following the termination of the Agreement. Paragraph 6 is not even a true non-competition clause. There is nothing in it to prohibit the Stoeckers from operating their own Nanny placement service. It would arguably only prohibit the Stoeckers from using Polcyn as a domestic professional in their new service. Therefore, we conclude that Georgia law pertaining to restrictive non-competition clauses ancillary to employment contracts is inapplicable to the instant controversy.

■ Nannys contends that, under Georgia law applicable to restrictive covenants in general, such covenants will be upheld if the restraint does not over protect the interests of the party in whose favor it is imposed. *Interstate Security Police, Inc. v. Citizens and Southern Emory Bank,* 237 Ga. 37, 226 S.E.2d 583, 585 (1976). The Stoeckers contend that the instant restrictive covenant does over protect Nannys' interests. They contend that the restrictive covenant is overbroad because the Stoeckers "cannot hire anyone who might have been employed by plaintiff at any time, *even if plaintiff were* completely unwilling or unable to tender qualified personnel or completely unwilling or unable to tender qualified personnel for any reason, such as the geographic location of the work."

Nannys responds that this parade of horribles is inappropriate, and that, under Georgia law, the test for a contract in restraint of trade is whether it was reasonable for the parties to enter into it. *Interstate,* 237 Ga. 37, 226 S.E.2d 583, 585.

Whenever a consideration appears to make it a proper and useful contract and such as cannot be set aside without injury to a fair contractor, it ought to be maintained. When such a contract is considered in connection with the circumstances in which it was made, that is, the situation, business, and objects of the parties, and the restraint thus contracted for appears to have been for a just and honest purpose for the protection of the legitimate interests of the party in whose

favor it is imposed, reasonable as to them, and not specifically injurious to the public, the restraint will be held valid. *Id.* (citing *Scott v. Hall*, 56 Ga.App. 467(2), 192 S.E. 920 (1937)).[8] We find that the restrictive covenant in Paragraph 6 is reasonable and thus enforceable under Georgia law.

Nannys is selling a service. That service is to take care of all the employment process headaches usually associated with hiring domestic help.[9] Nannys does all the searching, screening and interviewing. It conducts security checks of its help so a prospective employer need not spend time contacting references. Additionally, Nannys, as the actual employer of the domestic help provides the domestic help with group health and life insurance, something a solitary employer would be unlikely to provide. Nannys also pays the employer's share of F.I.C.A. tax. In short, Nannys does all the work associated with hiring and employing domestic help.

The restrictive covenant at issue in this case is necessary to protect Nannys' business interest. It prevents a client from stealing the value Nannys created in the placement of valued domestic help. In this case, Nannys apparently did its job so well that the Stoeckers wanted to buy out Polcyn's contract and hire him directly. In short, we find the clause at issue reasonable.

*Conclusion*

We deny the Stoeckers' motion to dismiss Nannys' complaint for failure to state a claim upon which relief can be granted because we find the clause at issue is reasonable under the circumstances in this case.[10] It is so ordered.

---

8. Nannys also cites a similar passage which refers specifically to restrictive non-competition covenants ancillary to employment contracts:

   Under the law of Georgia, covenants in restraint of trade may be enforced if they are reasonable as to time and place and are not overly broad as to the activities proscribed, taking into consideration the interests of individuals in gaining and pursuing a livelihood, of commercial concerns in protecting property, confidential information and relationships, good will and economic advantage, and of the broader public policy favoring individual freedom to enter into contracts and to contract as one will. In all cases involving covenants not to compete, whether in sales of business or covenants ancillary to employment contracts, the rule of reason prevails: "[I]f, considered with reference to the situation, business, and objects of the parties, and in the light of all the surrounding circumstances ... the restraint contracted for appears to have been

   for a just and honest purpose, for the protection of legitimate interests of the party in whose favor it is imposed, reasonable as between them, and not specially injurious to the public, the restraint will be held valid."
   *Durham v. Stand–By*, 230 Ga. 558, 198 S.E.2d 145, 148 (1973) (citations omitted). Thus, even if we found that employment case law is relevant, which we specifically do not, similar considerations would be relevant to our inquiry.

9. For a fanciful introduction to the world of nannys, *see generally* R. Rodgers and O. Hammerstein, *The Sound of Music* (1965); R. Sherman and R. Sherman, *Mary Poppins* (1964).

10. Both parties have filed motions under Fed.R. Civ.P. 11. We take both motions under advisement pending resolution of the merits. Additionally, we will address the motion to dismiss the counterclaim in a separate opinion, if need be.