A91A0805. U3S CORPORATION OF AMERICA v. PARKER et al.
(414 SE2d 513)

POPE, Judge.

U3S Corporation of America d/b/a Must Software International ("Must") purchased a computer software product line known as Nomad from D&B Computing Services, Inc. ("D&B"). Subsequently, Must hired former D&B employees Doris Bihm and Joe Oliver to serve as professional services consultants to its customers, but did not hire former D&B employee Larry Parker. Parker established Diversified Business Systems, Inc. ("Diversified") and Bihm and Oliver, while still employed by Must, each invested $10,000 to become shareholders of Diversified. First Bihm and then Oliver left Must to work for Diversified. Diversified provides professional consulting services to clients which use Nomad software. Must claims that by engaging in these services, Bihm and Oliver have breached the terms of their employment contract with Must and Parker has breached the terms of his employment contract with D&B which, Must claims, it is entitled to enforce.

Must filed suit against Diversified and the three individuals seeking certain injunctive relief and damages for breach of the terms and conditions of employment contracts, tortious interference with contractual relationships, conspiracy to commit tortious interference with contractual relationships, breach of the duty of loyalty and good faith and, against Parker and Diversified, aiding and abetting Bihm and Oliver to breach their duty of loyalty and good faith. The defendants

counterclaimed for damages for abusive litigation. The trial court granted defendants' motion for summary judgment on those three counts of the complaint alleging breach of terms and conditions of employment contracts and the two counts alleging conspiracy to commit tortious interference with contractual relationships. The trial court denied Must's motion for partial summary judgment on the counterclaim. Must appeals these rulings. The trial court also granted defendants' motion for summary judgment on the two counts of the complaint in which Must sought injunctive relief, but Must does not appeal these rulings.

1. Preliminarily, we note that all parties to this appeal have relied heavily in their briefs on hearsay evidence. In arriving at the disposition of this appeal we have not considered inadmissible hearsay evidence but have relied, primarily, upon the terms of the various written contracts which were properly before the trial court on the motions for summary judgment.

2. Must first argues the trial court erred in granting summary judgment to defendants on those counts of the complaint alleging breach of the terms and conditions of each individual's employment contract (Counts I, II and V).

(a) In regard to defendant Parker, Must claims Parker's activities with Diversified constitute a breach of the terms and conditions of his previous employment with D&B. The threshold issue is whether Must is entitled to enforce D&B's rights under Parker's employment contract.

Must purchased the rights to the Nomad software line pursuant to an asset purchase agreement. The assignment to Must of rights under the terms and conditions of D&B's employment contracts was made by a separate document to the asset purchase agreement. D&B's employment agreement rights were assigned to Must only "to the extent that such employment agreements relate to the System and the NOMAD2 Business (as defined in the Asset Purchase Agreement . . .). . . ." This proviso merely served to exclude from the assignment the right to enforce those employment agreement rights which are unrelated to that part of the business which was sold to Must. The purchase agreement documents clearly show, however, that Must was assigned the right to enforce any violation of an employment agreement that related in any way to that part of the business sold to Must. Since D&B no longer holds any interest in the System and Nomad2 business, to construe the agreement otherwise, as set forth in the dissenting opinion, would lead to the absurd result of leaving no party with the authority to protect the System and Nomad2 business from nondisclosure and non-solicitation violations.

Schedule A of the asset purchase agreement describes the assets assigned under "The System" as "[a]ll of the assets, properties,

rights, *businesses, operations and goodwill* of Seller related to the System. . . ." (Emphasis supplied.) Pursuant to the terms of the asset purchase agreement, the obligations assumed by the purchaser include: "*Customer Contracts.* All obligations of Seller under any license, agreement, contract . . . including Consulting or Professional Services Agreements. . . ." Thus, contrary to the conclusion of the dissenting opinion, the asset purchase agreement assigned to Must far more that just the product development or marketing aspect of D&B's business. It is obvious from the asset purchase agreement that D&B assigned to Must all interest in that part of its business known as the System, including professional services to customers. Thus, the assignment of rights under the terms and conditions of employment agreements included D&B's employment contracts with professional service employees whose work related to the System, such as defendant Parker. To the extent that the terms and conditions of Parker's employment contract are enforceable, Must was assigned the right to enforce them.

The pertinent part of the terms and conditions of Parker's employment contract states: "Employee will regard and preserve as confidential all information pertaining to the Company's business that may be obtained by him from any source as a result of his employment hereunder and he will not, without written authority from the Company, disclose to any persons, or use for his own benefit, during his employment or for a period of two (2) years thereafter, any such information relating to methods, processes, apparatus, programs or other materials conceived, designed, created or heretofore or hereafter used or developed by the Company or any of its customers, customers' lists, pricing and pricing methods, agents, suppliers or contractors, all such information being considered to relate to trade secrets and to be confidential information of the Company; he will not solicit or in any manner encourage employees of the Company to leave the employ of the Company. . . . This agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, beneficiaries, successors and assigns."

The trial court denied Parker's motion for summary judgment on those two counts of the complaint alleging tortious interference with Must's contractual relationships with Bihm and Oliver, expressly finding that issues of fact remain concerning Parker's liability for hiring Bihm and Oliver away from Must. One of the issues we must consider, then, is whether the alleged interference with the employment contracts of Bihm and Oliver is also a breach of the non-solicitation covenant of Parker's employment contract, as set forth above.

Parker argues the non-solicitation covenant is unenforceable because it is vague and ambiguous and not limited in time. We do not believe that the phrase "or in any manner encourage employees of the

Company to leave" is so vague or ambiguous as to be unenforceable. For example, in *Lane Co. v. Taylor,* 174 Ga. App. 356, 360 (2b) (330 SE2d 112) (1985), this court held enforceable a non-solicitation clause which included the phrase "or directly or indirectly cause any . . . employee to leave his employment in order to work for another." Id. We also reject Parker's argument that the two-year limitation contained in the nondisclosure clause of his employment contract does not apply to the non-solicitation clause. Although the non-solicitation clause is set apart from the nondisclosure clause by a semi-colon, the time limitation is contained in the same sentence as the non-solicitation clause and, pursuant to the rules of construction, the time limitation applies to each restriction in the sentence, even those appearing after the semi-colon. See OCGA § 13-2-2 (6); *Bridges v. Home Guano Co.,* 33 Ga. App. 305 (125 SE 872) (1924). Thus, the trial court erred in granting summary judgment to defendant Parker on Counts I and II of the complaint alleging breach of the non-solicitation clause of his employment contract.

The trial court also granted summary judgment to Parker on Count V of the complaint alleging breach of the nondisclosure clause of his employment contract. Parker argues the nondisclosure clause is overly broad and therefore unenforceable. In particular, Parker argues that the record shows Must's customer lists are a matter of public record and since the disclosure of customer lists is one of the items of information he was prohibited from disclosing, then pursuant to the holding in *Nasco, Inc. v. Gimbert,* 239 Ga. 675 (238 SE2d 368) (1977), the nondisclosure clause is therefore unenforceable. In *Nasco,* the nondisclosure clause applied to " 'any information concerning any matters affecting or relating to the business of employer' including but not limited to [certain specific information]." Id. at 676 (3). The Supreme Court noted that "[t]here is a great deal of public information concerning many matters which would affect or relate to the business of the employer; e.g., interest rates or minimum wage legislation." Id. Consequently, the court held the nondisclosure provision was overly broad and unenforceable. In this case, however, while the nondisclosure provision includes at least one item of information which is available to the public, the duty not to disclose is limited to "information . . . that may be obtained by him from any source *as a result of his employment. . . .*" Thus, the nondisclosure clause does not prohibit the disclosure of information obtained through public knowledge and is not overly broad.

Despite the public policy disfavoring agreements in restraint of trade, " '[i]f, considered with reference to the situation, business, and objects of the parties, and in light of all the surrounding circumstances . . . the restraint contracted for appears to have been for a just and honest purpose, for the protection of the legitimate interests

of the party in whose favor it is imposed, reasonable as between them, and not specially injurious to the public, the restraint will be held valid.' [Cits.]" *Durham v. Stand-By Labor of Ga.*, 230 Ga. 558, 561-562 (2) (198 SE2d 145) (1973). Here, the nondisclosure clause is reasonably related to protecting the interests of the owner of a computer software system against competitive use by a former employee of that special knowledge he would have naturally obtained as a result of his employment. "[I]t is clear that the items listed are confidential business information which are protectable as such, and that this provision does not prohibit the [defendant's] using the skills and dexterity which he has acquired [during his employment with plaintiff's predecessor in interest] with any new employer. . . ." *Nunn v. Orkin Exterminating Co.*, 256 Ga. 558, 559 (2) (350 SE2d 425) (1986). Consequently, we hold the trial court erred in granting summary judgment to Parker on Must's claim that Parker breached the nondisclosure clause of his employment contract.

(b) In regard to defendants Bihm and Oliver, Must claims their activities with Diversified constitute a breach of the terms and conditions of employment contained in the identical written contracts they both signed when they accepted employment employment with Must. The contracts contained a clause prohibiting the employee from disclosing confidential information to third parties without the employer's written consent. The nondisclosure clause contained no time limitation and is therefore unenforceable. See *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181 (4) (236 SE2d 265) (1977); *Thomas v. Best Mfg. Corp.*, 234 Ga. 787 (1) (218 SE2d 68) (1975). Thus, the trial court did not err in granting summary judgment to defendants Bihm and Oliver on the claim in Count V of the complaint that their activities violated the nondisclosure clause of their employment contracts.

The non-solicitation covenant in the two employment contracts, however, was limited to two years. It cannot be said that such a period is excessive, considering the nature of the business activity involved. See *Lane Co. v. Taylor*, supra at (2). The covenant provided that the employee would not, for two years after termination, "solicit *or otherwise encourage* others to leave" their employment with Must. (Emphasis supplied.) For the reasons set forth in Division 2a, we reject defendants' argument that the phrase "or otherwise encourage others to leave" is so vague as to make the covenant unenforceable. The reasonably limited non-solicitation covenant was separate from the unenforceable nondisclosure covenant and may be separately enforced. See *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135 (3) (355 SE2d 437) (1987); *Lane Co. v. Taylor*, supra.

Plaintiff claims Bihm violated the non-solicitation clause of her employment contract by encouraging Oliver to leave his job with Must and join her and Parker at Diversified. The trial court denied

defendant Bihm's motion for summary judgment on the count of the complaint alleging she joined with Parker and Diversified to interfere tortiously with Must's contractual relationship with Oliver, expressly finding that issues of fact remain concerning Bihm's liability for hiring Oliver away from Must. By the same token, issues of fact remain concerning whether Bihm's alleged interference with Must's contractual relationship with Oliver is also a breach of the non-solicitation covenant of her employment contract. Consequently, the trial court erred in granting summary to defendant Bihm on Must's claim in Count II of the complaint for breach of the non-solicitation clause of her employment contract.

3. Must next argues the trial court erred in granting summary judgment to defendants on those counts of the complaint which allege defendants Parker and Diversified conspired to interfere tortiously with Bihm's employment contract and that Parker, Bihm and Diversified conspired to interfere with Oliver's employment contract (Counts VII and IX). According to Must, these rulings are inconsistent with the trial court's denial of summary judgment on Count VIII of the complaint alleging Parker and Diversified are jointly liable for tortious interference with Must's contractual relationship with Bihm and the denial of summary judgment on that count of the complaint alleging Parker, Bihm and Diversified are jointly liable for tortious interference with Must's contractual relationship with Oliver.

" 'A civil conspiracy has been defined as a combination between two or more persons to do some unlawful act which is a tort or else to do some lawful act by methods which constitute a tort. The averment of a conspiracy in the declaration does not ordinarily change the nature of the action nor add to its legal force or effect. The gist of the action is not the conspiracy alleged, but the tort committed against the plaintiff and the damage thereby done wrongfully.' (Citations and punctuation omitted.) *Sofate of America v. Brown*, 171 Ga. App. 39, 40 (318 SE2d 771) (1984)." *Kem Mfg. Corp. v. Sant*, supra at 143 (7c). The trial court properly granted summary judgment on the conspiracy counts of Must's complaint because these counts are merely restatements of the claims set forth in the joint tortfeasor counts described above.

4. Finally, Must asserts the trial court erred in denying its motion for summary judgment on defendants' counterclaim for damages for abusive litigation. The trial court granted summary judgment to defendants on seven of the eleven counts of the complaint but expressly found that four of the counts raised issues to be tried. As set forth in this opinion, the trial court erred in granting summary judgment to defendants on three of those five counts which were addressed in this appeal. Only the grant of summary judgment on those two counts which sought injunctive relief was unchallenged by Must on appeal.

Consequently, issues remain to be tried in seven of the eleven counts set forth in the complaint (Count I, alleging Parker is liable for breach of contract for soliciting and encouraging Bihm to leave Must; Count II, alleging Parker and Bihm are liable for breach of contract for soliciting and encouraging Oliver to leave Must; Count V, alleging Parker is liable for breach of the nondisclosure clause of his employment contract, although summary judgment was properly granted to Bihm and Oliver on this count; Count VI, alleging Parker and Diversified are jointly liable for tortious interference with Bihm's employment contract; Count VIII, alleging Parker, Bihm and Diversified are jointly liable for tortious interference with Oliver's employment contract; Count X, alleging Bihm and Oliver breached their fiduciary duty to plaintiff; and Count XI, alleging Parker and Diversified aided and abetted the other two defendants' breach of fiduciary duty). In the opinion of this court, the allegations of the complaint, even the two counts seeking injunctive relief, "can in no sense be categorized as being completely devoid of any justifiable issue of law or fact." *Guernsey Petroleum Corp. v. Data Gen. Corp.*, 183 Ga. App. 790, 796 (4) (359 SE2d 920) (1987). "Because the area of non-compete clauses is one in which similar clauses beget dissimilar results and each case must be considered on its own particular facts," this court held, even in a case in which the non-compete clause on which the suit was based was unenforceable, that summary judgment was properly granted to plaintiff on defendant's claim for abusive litigation. *Colquitt v. Network Rental*, 195 Ga. App. 244, 246 (2a) (393 SE2d 28) (1990). We hold that no issue exists concerning whether plaintiff's complaint was "substantially frivolous, substantially groundless, or substantially vexatious." *Yost v. Torok*, 256 Ga. 92, 96 (344 SE2d 414) (1986). Thus, the trial court erred in denying Must's motion for summary judgment on defendants' counterclaim for abusive litigation.

*Judgment affirmed in part and reversed in part. Sognier, C. J., Cooper, Andrews, JJ., and Judge Arnold Shulman concur. Beasley, J., concurs in judgment only. McMurray, P. J., Birdsong, P. J., and Carley, P. J., concur in part and dissent in part.*

BIRDSONG, Presiding Judge, concurring in part and dissenting in part.

1. To the extent of, and for the reasons hereinafter discussed, I dissent to the majority opinion.

2. I concur with Division 1 of the majority opinion, but it must be stated for clarity that, as evidentiary rules regarding the admissibility of evidence are applicable in a summary judgment proceeding, hearsay evidence is without probative value and cannot be considered unless it is a part of the res gestae. *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (2a) (397 SE2d 576). After discounting inadmissi-

ble hearsay, I tend to view the viable evidence of record in a somewhat different light than my colleagues in the majority.

3. Appellees asserted, and I agree, that Must Software has no rights to appellee Parker's terms and conditions of employment contract. Incidentally, appellee's position was supported by the expert opinion contained in the affidavit of the general counsel and secretary of D&B who so informed the corporate counsel of Must. This opinion is indicative of the intent of D&B, as to the scope of the assignment agreement, when it was entered into with Must. The majority concludes, inter alia, that although D&B's employment agreement rights were assigned to Must only " '*to the extent that* such employment agreements relate to the System and the NOMAD2 Business (as defined in the Asset Purchase Agreement . . .). . . .' This proviso merely served to exclude from the assignment the right to enforce those employment agreement rights *which are unrelated* to that part of the business which was sold to Must." (Emphasis supplied.) This interpretation is over-restrictive and, in effect, serves to revise and expand the scope of the assignment as evidenced by the clear words thereof. Nor do I agree that "[t]he purchase agreement documents clearly show . . . that Must was assigned the right to enforce any violation of an employment agreement that related in any way to that part of the business sold by Must." In my view, the majority has tortured the *plain language* of the assignment agreement to arrive at this interpretation. "Courts are not at liberty to revise contracts while professing to construe them." *Stuckey v. Kahn*, 140 Ga. App. 602, 606 (1) (231 SE2d 565).

Examination of the applicable assignment provisions and the terms of the relevant documents incorporated therein reveals that Must intentionally was assigned by D&B only very limited rights to appellee Parker's terms and conditions of employment contract, as alleged by appellees. The record does not reflect that Must was at a bargaining disadvantage when entering the assignment agreement with D&B. If D&B and Must in fact intended to assign to Must the full right of enforcement of all the terms and conditions of employment contracts entered between D&B and its current and former employees, it would have been an easy matter to so provide in the assignment agreement in clear and unambiguous terms.

The assignment agreement on its face provides that D&B retained its right as the employer under such employment agreements with respect to matters other than those pertaining to the System and the Nomad2 Business. And review of the referenced Asset Purchase Agreement and the exhibit provisions therein incorporated likewise reveals that the terms "System" and "Nomad2 Business" referred to in the assignment document substantially limit the scope of Must's assignment of rights under Parker's terms and conditions of employ-

ment contract. Thus, it appears clearly and unequivocally from these documents that Must has been assigned enforceable rights under Parker's terms and conditions of employment contract only to the extent that the provisions thereof directly relate to the *development* of the Nomad2 computer software systems and its various related systems, or to the *marketing* of licenses pertaining thereto and to the Nomad2 Business. "Where the terms of a written contract are clear and unambiguous [as here], the court will look to the contract alone to find the intention of the parties" (*Health Svc. Centers v. Boddy*, 257 Ga. 378, 380 (359 SE2d 659)); and, it is the duty of the courts to construe and enforce contracts as made, and not to make them for the parties (*Sasser & Co. v. Griffin*, 133 Ga. App. 83, 86 (2a) (210 SE2d 34)).

The majority justifies its departure from these sound rules by asserting that to construe the agreement, according to its plain language as I have done, leads to an absurd result. I find nothing absurd about this result; it is far more likely that the restrictive language was inserted intentionally in the assignment agreement by D&B to protect people like Parker who were not going to be hired by Must. In this regard, I note that Must did not rely upon the old D&B conditions of employment as to those D&B employees whom it elected to hire; rather it required them to enter into new conditions of employment contracts with Must. I also find informative, the opinion voiced by the general counsel and secretary of D&B and the totality of the circumstances which the record reveals about Parker's release from employment by D&B to facilitate his non-hiring by Must. Under all these circumstances, I find it entirely possible and not at all absurd that D&B did not want to vest Must with the power to preclude its former loyal employees from earning a livelihood by utilizing their knowledge and skills acquired with D&B for as long as those skills would remain viable in the fast changing world of software technology. However, informed speculation notwithstanding, the motive of D&B for its conduct bears no relevancy to the legal issue of contract interpretation. In final analysis, an unambiguous contract states what it means and means what it states, no more and no less. On the face of this assignment contract, Must was not vested with the right to enforce the terms and conditions of employment contract signed between D&B and Parker.

As, in my opinion, Must was not entitled to enforce Parker's conditions of employment agreement with D&B, the trial court did not err in granting summary judgment to defendant Parker on Counts I, II and V of the complaint.

4. I agree that the nondisclosure covenant in Bihm's and Oliver's conditions of employment contract is unenforceable. These nondisclosure covenants expressly attempt to prevent the nondisclosure of

"know-how" and thus prohibit, without time limitation, Bihm and Oliver from using with any new employer their subjective knowledge (such as skill and dexterity) which they acquired at both D&B and Must. *Howard Schultz & Assoc. v. Broniec*, 239 Ga. 181, 188 (4) (236 SE2d 265); *Prudential Ins. Co. &c. v. Baum*, 629 FSupp. 466 (3, 4) (N.D. Ga.); *Wesley-Jessen v. Armento*, 519 FSupp. 1352, 1362 (23) (N.D. Ga.); compare *Thomas v. Best Mfg. Corp.*, 234 Ga. 787 (1, 2) (218 SE2d 68).

I also agree that the non-solicitation provisions contained in the terms and conditions of employment contracts of Bihm and Oliver are not overly broad and vague; these provisions are enforceable. Nevertheless, I believe the trial court did not err in granting summary judgment in favor of appellee Bihm as to claims for violation of the non-solicitation for hiring provisions of her contract. After identifying hearsay evidence and applying the rule discussed in Division 2 above, I believe there exists, at best, only a shadowy semblance of an issue of Bihm's violation of any non-solicitation for hiring provisions contained in the terms and conditions of her employment contract. Summary judgment law does not require a movant/defendant to establish that no issue of fact whatsoever remains, but only that no genuine issue of material fact remains; and while some shadowy semblance of an issue may exist, regarding these averments, the case may nevertheless be decided as a matter of law where, as here, the evidence shows clearly and palpably the jury could reasonably draw but one conclusion. *Strickland v. DeKalb Hosp. Auth.*, supra at 65 (2a); compare *Dozier v. Wallace*, 169 Ga. App. 126, 129 (4 b) (311 SE2d 839).

The majority concludes the trial court erred in granting summary judgment to defendant Bihm on Must's claim in Count II of the complaint for breach of the non-solicitation clause of her employment contract. As above discussed, I believe the trial court did not err in granting summary judgment to Bihm on Must's claim in Count II in view of the posture of the record, particularly after all hearsay evidence is identified and accorded no probative value as required by law.

5. I agree with appellees that the trial court did not err in denying appellant's motion for partial summary judgment with respect to appellees/defendants' counterclaim for common-law abusive litigation. The counterclaim averred inter alia that appellant has engaged in abusive litigation by virtue of asserting in its complaint *certain claims* that lack substantial justification and that were asserted for purposes of harassment.

The redefined elements of the common-law claim of abusive litigation are: "Any party who shall assert a *claim*, defense, or other position with respect to which there exists such a complete absence of any justiciable issue of law or fact that it reasonably could not be

believed that a court would accept the asserted claim, defense, or other position; or any party who shall bring or defend an action, *or any part thereof*, that lacks substantial justification, or is interposed for delay or harassment; or any party who unnecessarily expands the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures, shall be liable in tort to an opposing party who suffers damage thereby. The term 'lacks substantial justification' shall mean substantially frivolous, substantially groundless, or substantially vexatious." (Emphasis supplied.) *Yost v. Torok*, 256 Ga. 92, 96 (344 SE2d 414). Applying this definition and in view of my conclusions as to the correctness of the trial court's rulings, I conclude the trial court did not err in denying appellant's motion for partial summary judgment, thereby allowing appellees' counterclaim to go to a jury for resolution. See *Remler v. Shiver*, 200 Ga. App. 391 (408 SE2d 139).

Additionally, while the gist of the conspiracy actions in this case may inextricably be based upon the same joint tortfeasor conduct asserted in other counts and, in effect, a restatement of such counts, this does not mean that the averment of conspiracy counts is merely the legal equivalent of averring the underlying joint tortfeasor counts *for all purposes*. Claims of conspiracy include a gravamen not found in the mere claim of the underlying tortious conduct to which they pertain, and it enables the party asserting the claim to introduce certain types of evidence in proof of the averred conspiracy that might not otherwise be relevant to prove the underlying tortious conduct itself. The conspiracy claims in this case were substantially groundless and substantially frivolous; moreover, considering the stigma inherently attached to a tortious "conspiracy," by nature of the gravamen of the claim, when such a claim is, as in this case, without substantial basis it is also substantially vexatious.

Further, as the majority concedes, the trial court did not err in granting summary judgment to Bihm and Oliver as to Count V, breach of the nondisclosure clause, and this certainly would create a jury issue as to the matter of counterclaim. The pattern of numerous, broad, related averments asserted in this case, coupled with the obvious lack of substantial justification for averring some of them, standing alone would give rise to a genuine issue of material fact as to the counterclaim. See generally *Remler*, supra.

The trial court has broad power to control its proceedings so as to ensure that the interests of justice are served, and even "in a close case, a trial court may deny summary judgment and anticipate a second opportunity to consider its ruling on a subsequent motion for directed verdict." *Porter v. Felker*, 261 Ga. 421, 422 (2) (405 SE2d 31). The trial court in my view properly denied Must's motion for summary judgment as to the abusive litigation counterclaim.

I am authorized to state that Presiding Judge McMurray joins in this dissent.

DECIDED DECEMBER 5, 1991 —
RECONSIDERATION DENIED DECEMBER 20, 1991 —

*Vincent, Chorey, Taylor & Feil, Celeste McCollough*, for appellant.

*Bovis, Kyle & Burch, Steven J. Kyle*, for appellees.