77424, 77425. A. L. WILLIAMS & ASSOCIATES, INC. et al. v. FAIRCLOTH; and vice versa.
(380 SE2d 471)

DEEN, Presiding Judge.

A. L. Williams & Associates, Inc. (Williams), markets life insurance as a general agent for Massachusetts Indemnity and Life Insurance Company (MILICO), and provides a sales force of agents for MILICO's products. The Williams agency has a management structure including Regional Vice Presidents (RVPs), some of whom are appointed Senior Vice Presidents (SVPs). The SVPs also have RVP duties. The agents receive a commission based upon the amount of the first-year premium paid by the client. They may also receive renewal commissions, as specified in their respective contracts, based upon subsequent annual premiums.

Managers, RVPs, and SVPs also receive first-year and renewal commissions known as overrides, which are based upon commissions earned by the agents whom they manage. The general agent (Williams) also receives commissions based upon first-year sales by its sub-agents and renewals. Agents, including managers, receive advance commissions from MILICO each of which is actually a loan, denominated a "debit balance," until the client pays the premium. This debt is repayable by the agent if the premium is not paid.

Norman Tee Faircloth was appointed by Williams as a general sales agent for MILICO. He held the titles of RVP and SVP with Williams. There were three contracts that he executed with regard to these positions: the MILICO agent agreement, the Williams Regional Vice President agreement, and the Williams Senior Vice President agreement.

Faircloth, as RVP and SVP, had approximately 40-60,000 sub-agents below him and he received overrides based upon the produc-

tion of these agents. His duties included recruiting, training, and motivating the agents as well as selling insurance products himself. Williams and Faircloth had some difficulties in their business relationship, and Williams notified Faircloth by letter dated June 28, 1982, that it was exercising its contract right to notify MILICO to terminate his status as agent for that company. He was also informed that as of June 28, 1982, the RVP contract was terminated, and he was advised to abide by the terms of the SVP contract to avoid divestment and forfeiture of benefits which might be payable under it. On August 13, 1983, MILICO notified Faircloth that their agreement was terminated. Williams contends that after Faircloth received the June 28 letter, he immediately breached the terms of the SVP agreement by recruiting Williams' personnel for a competing business that he had established. Williams also contends that the SVP contract conditioned payment of overrides upon Faircloth's not accepting employment as an agent with any of three specified life insurance companies for whom Williams had been a general agent. Faircloth executed a general agency contract with Financial Assurance on September 9, 1982. He did not receive any further compensation from Williams and MILICO.

In 1984, Faircloth filed a complaint against A. L. Williams & Associates, Inc., "The A. L. Williams Agency," Arthur L. Williams, and Massachusetts Indemnity and Life Insurance Company, alleging that the various defendants had breached certain insurance agency contracts and fraudulently terminated his contracts. The complaint was later amended to add additional allegations of breach of contract, tortious interference with contracts, and conversion of commissions. The defendants denied liability and asserted counterclaims. The A. L. Williams Agency denied that it was a legal entity amenable to suit.

In November of 1985, Faircloth moved for partial summary judgment on the issue of whether certain noncompetition convenants contained in the contracts were enforceable. On March 17, 1986, the court granted the motion in part and denied it in part, holding that the covenants were unenforceable by injunctive relief, but were valid as a condition to Faircloth's entitlement to contractual benefits. After the decision in *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135 (355 SE2d 437) (1987), the trial court, on August 17, 1987, amended its order and granted appellee's motion in its entirety.

In January of 1986, Faircloth moved to strike four counts of Williams' counterclaims not contained in the original answer. The trial court denied the motion, but *sua sponte* struck them, ruling that they were not properly before the court since leave to amend had not been obtained. On August 17, 1987, the court denied Williams' motion to permit filing of the stricken counterclaims.

Faircloth moved for partial summary judgment in May of 1986

on one of the original counterclaims and on one of the four additional counterclaims not contained in the answer. The court held that the issue as to the latter was moot because it had denied Williams' motion to amend; it granted summary judgment to Faircloth on the former, apparently on procedural grounds. It noted, however, that summary judgment would be granted on the merits if the issue were properly before the court.

On January 14, 1986, all the defendants moved for summary judgment in their favor on Counts I, II, and III of the complaint and for the A. L. Williams Agency as to the entire complaint. The court denied the motions except as to "The A. L. Williams Agency" finding it was not a legal entity.

### Case No. 77524

1. Appellants contend that the trial court erred in failing to grant summary judgment in their favor as to Count III of the complaint (the issue of "fraudulent termination" of the various contracts between the parties).

Count III of Faircloth's complaint alleges that the defendants fraudulently terminated his rights under the various contracts by inducing him "to diligently devote his time and energies into building up an effective and profitable organization within the structure established by the Williams organizations and MILICO, and that after that structure had been established and [he] was reaping the benefits thereof, defendants maliciously and without cause terminated those contracts, thus retaining the benefits of his endeavors, and preventing [him] from receiving the benefits to which he would otherwise have been entitled."

The Senior Vice President (SVP) agreement incorporates the Regional Vice President (RVP) contract by reference. While the RVP contract is terminable at will, the SVP agreement is not. It specifically provides that it may be terminated only by agreement of the parties or for cause. Faircloth's Regional Manager agreement with MILICO provides that Williams is appointed his attorney-in-fact to amend the agreement or commission schedule. Paragraph 6 reserves to the general agent (Williams), who is not a party to the agreement, the right to notify the company to terminate the agreement. Faircloth's SVP contract, however, controls the power of Williams to terminate his employment only for cause or by agreement of the parties. It also requires Williams to use its "best efforts" to obtain payment of commissions and for Williams to negotiate with life insurance companies on Faircloth's behalf. Williams was therefore Faircloth's agent when acting in his behalf in the enumerated instances. *Smith v. Merck*, 206 Ga. 361, 368 (57 SE2d 326) (1950). "The relation of prin-

cipal and agents is a fiduciary one," *Smith v. Merck* id., and whether the agreements were terminated by Williams in a fraudulent manner is a question of fact requiring jury resolution. A jury could find that its acts constituted an abuse of its agency powers by damaging Faircloth to its own benefit.

2. The key to appellants' argument that the court improperly denied summary judgment on the tortious interference with contract claims (Count II of the complaint) is that a mere breach of contract is not a tort. *Globe Life &c. Ins. Co. v. Ogden*, 182 Ga. App. 803 (357 SE2d 276)(1987), holds that this general rule applies in the absence of a special relationship. Agency, however, is a special relationship. *Bulmer v. Southern Bell &c. Co.*, 170 Ga. App. 659, 660 (317 SE2d 893) (1984). The MILICO Regional Manager contract appoints Williams as Faircloth's attorney-in-fact to amend the agreement and gives it a corresponding power to notify MILICO to terminate the agreement. These powers are controlled by Faircloth's agreement with Williams to terminate only for cause or by agreement, etc., as set forth in Division 1 above. A jury could find that Williams acted outside the scope of its powers by notifying MILICO and requesting that it terminate Faircloth's contract.

3. Appellants contend that the trial court erred in failing to grant summary judgment in their favor on Faircloth's "conversion" claim. In his complaint, Faircloth alleges that the defendant converted certain commissions that were due him under his employment contracts.

An examination of the record reveals that this issue was not raised in the motion to dismiss the conversion claim nor in the motion for summary judgment. No order referring to such a claim can be found in the record. Issues not raised and ruled upon in the court below cannot be raised in this court for the first time on appeal. *Bostic v. State*, 184 Ga. App. 509 (361 SE2d 872) (1987).

4. This enumeration, which claims that the court below erred in failing to grant summary judgment in MILICO's favor as to its liability for commissions following the termination of Faircloth's contract, was also not raised in the court below and will not be considered for the reason set forth in Division 3 above.

5. Appellants urge as error the failure of the court below to find that since the non-competition covenants were void, that the payment provisions conditioned upon the covenants likewise failed. The plaintiff raised the issue that the covenants were void, but appellants did not raise the issue that the payment provisions likewise failed.

6. Appellants assert as error the trial court's ruling that the non-competition covenants contained in Faircloth's contracts with Williams were invalid conditions to compensation thereunder. (The court was concerned with the contract provision that a breach of the covenants could trigger a forfeiture.)

The record shows that nothing in the plaintiff's motion for summary judgment of November 1985, asked for a ruling as to the effect of forfeiture of deferred compensation if the provisions were found to be unenforceable. In its March 17, 1986 order, in ruling on Faircloth's motion, the trial court found the covenant not to compete to be overbroad and, in response to the defense that the covenant was valid for the purposes of determining whether the plaintiff was entitled to renewal commissions, stated: "The unenforceability of the covenant, however, does not affect the right of A. L. Williams & Assoc., Inc., and Arthur L. Williams, Jr., to deny plaintiff certain benefits under the employment agreement based upon a forfeiture of those benefits for violation of the non-competition covenant. To the extent that plaintiff's motion seeks an order in its behalf on this forfeiture question, it is denied. See *Collins v. Storer Broadcasting*, 217 Ga. 41 (1961); *Sheppard v. Columbus Packaging*, 146 Ga. App. 202 (1988); *Shandor v. Wells National Service*, 478 F. Supp. 12 (N. D. Ga. 1979)."

The August 17, 1987, order only modified the prior grant of the plaintiff's motion and held that it was a jury question as to whether the plaintiff violated any alleged rules and regulations and whether any such violations provided a valid basis for the denial of deferred and renewal compensation. The court went on to find that under the decision in *Kem Mfg. Corp. v. Sant*, supra, "that defendants could not deny plaintiff his benefits based upon any breach of covenant which this court has found to be overbroad and unenforceable by way of injunction."

Contrary to appellants' assertion, we find no conflict between the holdings in *Collins v. Storer Broadcasting Co.*, supra, and *Kem Mfg. Corp. v. Sant*, supra. Collins involved a profit-sharing trust created by the employer which was managed by an independent trustee, and no contribution of employee funds was involved. The trust instrument created a committee to determine whether the divestiture provisions of the trust had been met and provided for the non-liability of the committee members except for wilful misconduct. In ruling upon a former employee's suit against the committee members which claimed that the committee members' breach of their duties towards him by determining that he had forfeited his right to participate in the plan was made wilfully and wantonly with a disregard of his rights, the court found that the committee members had acted in accordance with the powers granted under the trust instrument and the petition failed to state a cause of action. Nothing in *Collins* addresses the use of an overbroad restrictive covenant as a basis for liquidated damages or as a valid condition precedent to compensation. *Kem* held that an overbroad restrictive covenant which is tied in the contract to injunctive relief cannot be used to bring about a forfeiture in favor of one of

the contracting parties. We find no merit in this enumeration.

7. Appellants claim that it was reversible error for the court below to fail to grant his motion to add counterclaims VIII, IX, X and XI, which had not been filed with the answer. The trial court held that while plaintiff's motion to strike the counterclaims was untimely filed, the counterclaims were not properly before the court "because no leave of court had been obtained" to file them.

OCGA § 9-11-13 (a) requires a pleading to state "as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Subsection (f) provides: "When a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, he may by leave of court set up the counterclaim by amendment." Under this subsection the trial court is vested with discretion which will not be controlled by this court absent abuse. *Clairmont Foods v. Huddle House*, 142 Ga. App. 171 (235 SE2d 635) (1977).

After conducting a hearing, the trial court by order of August 17, 1987, found that the defendants knew or should have known of the grounds of certain counterclaims at the time the answer was filed. "[T]here is no reason or excuse for delay in filing these counterclaims, and this court is not persuaded that justice requires they be amended." The court cited *Sasser & Co. v. Griffin*, 133 Ga. App. 83, 89 (210 SE2d 34) (1974), as authority for its ruling. We find no error as the record below contains no reason for the delay of nearly 2 years in filing the counterclaims. See also *Ballenger Corp. v. Dresco &c. Contractors*, 156 Ga. App. 425, 435 (274 SE2d 786) (1980). Contrary to appellants' assertion, *Easley v. Clement*, 187 Ga. App. 799 (371 SE2d 416) (1988), is not on point and does not involve application of OCGA § 9-11-13 (f) which governs the late filing of compulsory counterclaims.

8. Appellants further claim that it was error for the trial court to consider the merits of Count IX of their counterclaim and in not permitting it to be filed. This count was based on the restrictive covenant and is controlled by our holding in Division 7 above.

9. The court below did not err in dismissing Count VII of appellants' counterclaim (breach of stock subscription pooling contracts) for want of proper parties. The counterclaim alleges that Faircloth resold 22,800 of his subscribed shares and that he "agreed to indemnify and hold harmless any person damaged by reason of plaintiff's breach of the above-referenced representations, warranties and agreements." This agreement was with First American National Corp. (now A. L. Williams Corp.). The counterclaim does not allege that anyone

was harmed as a result of the resale of the stock.

The trial court conducted a hearing, and there is no transcript of the evidence included with the appellate record. The counterclaim was dismissed on the grounds that appellants were not the real parties in interest. The court found that it had "substantial concerns about the propriety of the alleged assignment of the claim from [the stock purchasers] to A. L. Williams & Assoc., Inc." and went on to set forth its reasons. It found that the claim remained overwhelmingly that of the purchasers who were strangers to the litigation.

In the absence of a transcript, we must presume that the ruling of the trial court was based upon sufficient evidence to support it. *Georgia Hospitality &c. Assn. v. Harrison Advertising*, 181 Ga. App. 163 (351 SE2d 489) (1986).

Appellants further contend that OCGA § 9-11-17 requires a joinder of the parties. The court, however, found that by filing his counterclaim the plaintiff "cannot have subjected himself to the claims of strangers to the litigation, particularly in Fulton County which evidence in the record shows is not plaintiff's domicile." OCGA § 9-11-17 does not give a court jurisdiction which it cannot otherwise obtain.

Under OCGA § 9-11-17, a real party in interest objection is a matter in abatement and does not go to the merits of the case. *Hodgskin v. Markatron*, 185 Ga. App. 750, 752 (365 SE2d 494) (1988). A judgment sustaining a plea in abatement is not directly appealable. *Richard's Buick v. Sease*, 116 Ga. App. 232 (156 SE2d 365) (1967). Moreover, we note that the warranty given by Faircloth expressly runs to persons who are forced to defend claims and suffer loss. The purchasers have made no such claim.

## Case No. 77525

1. Faircloth contends that the trial court should have found that there were no genuine issues of fact concerning his entitlement to deferred compensation because the record demands a finding that the Williams defendants totally breached their contract with him.

The order in question shows that the trial court noted several triable issues of fact, including breach of rules and regulations, by the plaintiff. We have examined the record and find no error. Faircloth did not move for summary judgment on the basis that the July 28, 1982, termination letter constituted a total breach of contract. We find, however, that the trial court had the entire record before it, and the letter was available for the court's consideration. We cannot say that this letter constituted a breach of contract as a matter of law.

In arguing this enumeration of error, Faircloth incorporates material and issues that are outside the scope of the enumeration of error. Enumerations of error cannot be enlarged by brief on appeal to

cover issues not contained in the original enumeration. *Chevrolet-Pontiac-Canada Group v. Pearson*, 182 Ga. App. 796 (357 SE2d 152) (1987).

2. Faircloth's second enumeration of error is also based upon the same portion of the order mentioned in Division 1 above. He claims that the present record demands a finding that the rules tendered by the defendants cannot be linked to the SVP agreement within the statute of frauds.

An examination of the relevant documents shows the incorporation by reference of the RVP contract and the SVP contract. The RVP contract provided that "Williams may issue, from time to time, rules and/or regulations to which the RVP agrees to be bound." We find no merit in this enumeration of error.

3. It is not necessary to address Faircloth's remaining enumerations of error in view of our holding in Case No. 77524.

*Judgments affirmed. Carley, C. J., and Sognier, J., concur in the judgments only.*

DECIDED FEBRUARY 28, 1989 —
REHEARING DENIED MARCH 23, 1989 — ▮▮▮▮▮▮▮▮▮▮▮

*Gary G. Grindler, John K. Larkins, Jr., Nickolas P. Chilivis, Stanton J. Shapiro*, for appellants.

*Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom*, for appellee.

*Forrest L. Champion, Jr.*, amicus curiae.