A90A0203, A90A0204. ABALENE PEST CONTROL SERVICE, INC. et al. v. ORKIN EXTERMINATING COMPANY, INC.
(395 SE2d 867)

SOGNIER, Judge.

Orkin Exterminating Company, Inc. brought suit against Abalene Pest Control Service, Inc. of New York (Abalene), three other corporations, and Walter T. Blank, the individual who is president of all the corporate defendants, alleging breach of two warranties in the purchase agreement executed by the parties, breach of that agreement, and tort claims based on negligence, fraud, and negligent misrepresentation. The suit stemmed from Orkin's purchase of the assets of the above corporate defendants through their president, Blank (who is also a party to the purchase agreement in his individual capacity), specifically, the purchase of three properties in New York on which the presence of pesticides in the soil (on the Clinton and LaGrangeville properties) and barrels of buried pesticides (on the Fort Edward property) were allegedly discovered. The trial court granted partial summary judgment in favor of Orkin as to the Fort Edward property under one warranty claim and denied the motion for summary judgment on the entire complaint made by the defendants. The defendants' interlocutory appeal from the denial of their motion for summary judgment is consolidated in this opinion with their direct appeal from the grant of partial summary judgment in favor of Orkin.

1. We note initially that the purchase agreement executed by the parties provides that it "shall be construed in accordance with the laws of the State of New York." "The *lex loci* governs as to all substantive matters, and the *lex fori* as to all matters affecting the remedy or procedure. Rules of evidence, the methods of shifting the burden of proof, and the presumptions arising from a given statement of facts, are matters affecting the remedy or procedure. [Cit.]" *Hamilton v. Metropolitan Life Ins. Co.*, 71 Ga. App. 784, 790 (3) (32 SE2d 540) (1944). See also *General Elec. &c. Corp. v. Home Indem. Co.*, 168 Ga. App. 344, 349 (2) (309 SE2d 152) (1983). We thus apply the procedural law of Georgia where appropriate.

2. Appellants contend the trial court erred by denying their motion for summary judgment as to appellee's claims involving the Clinton and LaGrangeville properties. We find no merit in appellants' first argument that appellee's failure to introduce properly into the record the four Law Environmental, Inc. reports (which constituted the sole scientific evidence that pesticide residues were present in the soil of these properties) entitled appellants to summary judgment, because our review of the deposition taken by appellants of John Raymond, appellee's director of acquisitions, reveals that the Law Environmental reports were produced therein by appellants, marked for

identification, and thereafter authenticated by Raymond. Accordingly, the Law Environmental reports were to be used as if annexed to and returned with the original deposition on file. OCGA § 9-11-30 (f) (1) (B). Although the Law Environmental reports were not filed with the deposition, in the interest of judicial economy we have utilized the copies of those same reports present in the record as attachments to an untimely affidavit submitted by appellee. These reports clearly establish the existence of pesticide residues in the soil of the Clinton and LaGrangeville properties, and therefore summary judgment was properly denied.

Appellants argue alternately that even if the pesticide residues exist, no evidence was presented that the presence of the pesticides violated any applicable law so as to constitute a breach of paragraph 3.09 (a) of the purchase agreement, which provides that "[appellants are] in compliance with all applicable laws, orders, rules and regulations of governmental bodies and agencies applicable to it."

"The burden of proof on motion for summary judgment is always on the movant, even with respect to issues on which the opposing party would have the burden of proof during the trial of the case. [Cits.]" *Best v. Dublin Eye Assoc.*, 188 Ga. App. 225, 226 (372 SE2d 495) (1988). " 'In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. (Cits.)' [Cit.]" *Echols v. Hudson*, 189 Ga. App. 780, 781 (377 SE2d 542) (1989). " 'A motion for summary judgment should not be granted unless it affirmatively appears from the pleadings and evidence that the party so moving is entitled to prevail.' [Cits.]" *McGivern v. First Capital Income Properties, Ltd.*, 188 Ga. App. 716, 717 (1) (373 SE2d 817) (1988). Applying these rules, our review of the depositions of Raymond and Ted Barrow, appellee's employee and expert witness, discloses evidence from which it could reasonably be inferred that the presence of the pesticide residues at the Clinton and LaGrangeville properties was due to acts by appellants which violated various state and federal laws and regulations. Accordingly, the trial court did not err by denying appellants' motion for summary judgment.

3. Appellants contend the trial court erred by considering the transcript of a criminal trial involving Louis Yager, formerly employed by appellants as the district manager at the Fort Edward property. The criminal trial transcript reflects that Yager and Abalene were both named in an indictment, which, as to Yager, contained six counts including a count of unlawfully disposing of hazardous wastes, a felony to which Yager pled guilty. The criminal trial transcript consists of the hearing held on Yager's plea at which coun-

sel for both Yager and Abalene were present. Yager testified under oath that while serving as Abalene's district manager, he had personally authorized an employee under his supervision to excavate a hole and bury the hazardous wastes. He further testified he had talked with others at Abalene about the matter, and had informed appellant Blank about the burial of the pesticides the day after it occurred. The transcript reflects that the New York court accepted Yager's plea of guilty as to the one count of unlawfully disposing of hazardous wastes and accepted the State of New York's recommendation that Yager be sentenced to one year in prison for the felony. Upon the filing of the criminal trial transcript in the case sub judice, appellants objected to the inclusion in the record of the transcript, but obtained no ruling on their objection.

We find no merit in appellants' argument that testimony by a witness given under oath in the form of a transcript to an earlier legal proceeding is inadmissible on motion for summary judgment. A certified copy of a court transcript is one of the items a trial court is authorized to examine on motion for summary judgment to determine whether there is a genuine issue of material fact to be tried. *Bodrey v. Cape*, 120 Ga. App. 859, 860-861 (1) (172 SE2d 643) (1969). As unanimously noted in that whole court case, " 'a certified transcript of a court record is better evidence of its contents than an affidavit with regard thereto.' [Cits.]" Id. at 861. Accordingly, the testimony contained in the certified transcript of the hearing on Yager's guilty plea, insofar as such testimony may be relevant and material to the present proceeding, was subject to consideration by the court in carrying out its duty on summary judgment.

The cases cited by appellants in support of their contention, *Neal v. Neal*, 160 Ga. App. 771 (287 SE2d 109) (1982) and *Pierce v. Pierce*, 241 Ga. 96, 99-100 (3) (243 SE2d 46) (1978), are distinguishable from the case sub judice. First, the criminal trial transcript reflects that only Yager pled guilty to a charge in the indictment; thus, in the absence of any adjudication on the charges as to appellants the transcript could not have been offered to prove the truth of appellants' guilt or innocence, as in *Pierce*, supra. And, unlike *Neal*, supra, proof of Yager's guilt would not serve to bar any suit pending between appellee and appellants.

Research has uncovered the decision in *Moses v. Revco Discount Drug Centers*, 164 Ga. App. 73, 75 (296 SE2d 384) (1982), in which this court, reviewing the grant of summary judgment to the defendants in a malicious prosecution suit, upheld the exclusion of an entire transcript from a prior criminal proceeding. In *Moses*, supra, this court intimated that sworn testimony from a trial transcript was not admissible on motion for summary judgment. The bases for this holding were that "[e]vidence on motion for summary judgment is gener-

ally presented by affidavit [OCGA § 9-11-56, and t]he testimony of witnesses in former legal proceedings is limited to occasions where inaccessibility of the witness is shown, or where it may be useful for impeachment. Code § 38-314 [OCGA § 24-3-10]." Id. at 75. While evidence on motion for summary judgment may typically be by affidavit, that is not the exclusive method for presenting sworn testimony. *Bodrey*, supra. Nor is the accessibility of a witness to testify *at trial* a concern on motion for summary judgment where by statute none of the evidence needs to be established by live testimony. See OCGA § 9-11-56 (c), (e), (f). Since the transcript of the hearing to the criminal proceeding at issue here reflects that Yager was competent to testify, that his testimony was made under oath, and that it was based on his personal knowledge of what he did, what he ordered others to do, and what he told certain people, it was evidence admissible on motion for summary judgment pursuant to OCGA § 9-11-56 (e), and we cannot agree with the reasoning in *Moses*, supra, that such testimony was limited to the occasions set forth therein merely because it was recorded under oath in a prior legal proceeding. Accordingly, we disapprove that language in *Moses*, supra, and hold that the admission of the relevant and material evidence in the transcript of Yager's criminal hearing was not error.

4. Appellants contend the trial court erred by denying their motion for summary judgment as to the Fort Edward property and granting partial summary judgment as to this property to appellee on its allegation that appellants breached paragraph 3.09 (a) of the purchase agreement set forth above. The record reveals that three months after the sale between the parties had been concluded, the New York Department of Environmental Conservation executed a search warrant at the Fort Edward property and found more than 200 containers of various types of pesticides buried on the property. It is uncontroverted that appellee had no knowledge of the presence of the buried pesticides on the property.

(a) Appellants enumerate several reasons why the grant of appellee's motion for partial summary judgment was erroneous. "The general purpose of the summary judgment procedure is to determine if there is a material issue of fact to be tried, rather than to set up a technical pitfall for the unwary advocate. [Cit.]" *Thacker v. Matthews Tuxedo*, 183 Ga. App. 474, 475 (359 SE2d 231) (1987). Unfortunately, the result of a "technical pitfall for the unwary" constrains this court to reverse the grant of summary judgment in favor of appellee.

Appellants contend, as part of their enumeration of error, that appellee was not entitled to partial summary judgment because it failed to pierce appellants' affirmative defenses. The affirmative defenses in appellants' amended answer are couched in standard "boil-

erplate" language with no commentary on how they are applicable to the instant suit, and it is not possible to determine from the pleadings the precise evidentiary basis for these defenses. No motion for a more definite statement was made in order to clarify the defenses. However, as appellants correctly point out, appellee, "as moving party for summary judgment, had the burden of piercing appellant[s'] affirmative defense[s]. [Cits.]" *Peppers v. Siefferman*, 153 Ga. App. 206, 207 (3) (265 SE2d 26) (1980). Most of appellants' affirmative defenses appear to have been rebutted by the language of the purchase agreement in the record (including a provision under which appellants agreed to submit themselves to jurisdiction of Georgia courts), testimony that the purchase agreement was executed, and Raymond's deposition testimony to the effect that appellee had performed its obligations thereunder. Nonetheless, appellee has failed to point out to this court, nor has review of the record revealed, any sworn testimony piercing or even addressing several of appellants' more oblique affirmative defenses, such as the allegation that appellee's claim was "barred in whole or in part by the doctrines of laches, estoppel and waiver." Since it is possible that one or more of these defenses may go to the validity of the purchase agreement, it was improper for the trial court to pretermit them and rule on the merits of the claimed breach of a provision in the purchase agreement. Thus, any grant of partial summary judgment on the merits of this issue was premature and must be reversed. See generally *Sun First Nat. Bank v. Gainesville 75*, 155 Ga. App. 70, 74-75 (270 SE2d 293) (1980). *Gregory v. Vance Pub. Corp.*, 130 Ga. App. 118 (202 SE2d 515) (1973), cited by appellee, does not support a contrary result since it involved the treatment to be given evasive answers to requests for admission.

Finally, in briefing this matter appellants also argue that appellee failed to pierce issues involving their counterclaim. We do not address this matter "because an enumeration of error cannot be enlarged to include other issues not made therein." (Citations and punctuation omitted.) *Givens v. Bourrie*, 190 Ga. App. 425, 426 (2) (379 SE2d 223) (1989).

(b) Appellants also argue that the trial court's denial of their motion for summary judgment was error. We find no merit in this enumeration. In view of Abalene's status as a co-indictee of Yager and the attachments to the affidavit of Richard Decker, appellee's attorney, consisting of copies of suits filed against appellants and appellee (as owner of record of the Fort Edward property) by the State of New York and other local authorities seeking damages for violation of numerous laws, appellants' argument that appellee failed to adduce any evidence indicating that appellants may have violated any law or other applicable regulation by the presence of these barrels of pesticides so as to constitute a breach of paragraph 3.09 (a) is meritless.

Although the record reflects that appellants have acted to mitigate appellee's damages by paying for initial clean-up efforts at the Fort Edward property, the record contains evidence of pending suits and the potential for liability to surrounding landowners; testimony regarding the extensive actions necessary to finish removing the pesticides from the soil; and the actions appellee has had to take to avoid endangering its Fort Edward employees. Thus, we cannot agree with appellants' argument that appellee failed to present any evidence creating a question of fact whether appellee suffered any damages as a result of appellants' breach. Further, considering the letter in the record written to appellants' insurer by its own attorneys seeking coverage for lawsuits arising from the burial of containers of pesticides by "an employee or employees of Abalene," we do not agree with appellants that no evidence was adduced that appellants are responsible for the presence of at least some of the containers of pesticides at the Fort Edward property. Yager's testimony that he personally informed appellant Blank about the burial of the pesticides rebuts the deposition testimony by appellant Blank denying personal knowledge of the burial of the pesticide, so as to create a genuine issue of material fact for resolution by a jury. Finally, in view of the evidence establishing that appellants were directly responsible for burying containers of pesticides at the Fort Edward property, we find no merit in appellants' argument that appellee was required to prove appellants were the cause of *all* the pesticide contamination of the property before summary judgment in its behalf was appropriate. Accordingly, because appellants, as the parties moving for summary judgment, failed to carry their burden of showing the absence of a genuine issue of material fact on the issue of their liability for breach of the warranty in paragraph 3.09 (a) as to the Fort Edward property, the trial court properly denied their motion for summary judgment. See generally *Lynch v. Waters*, 179 Ga. App. 222, 225 (345 SE2d 867) (1986).

5. Appellants contend the trial court erred by denying their motion for summary judgment as to appellee's claims against them under paragraph 3.03 (a) of the purchase agreement. That paragraph provides that "[appellants have] good and valid title to the Assets, free and clear of any lien, security interest, charge, or other encumbrance except for minor imperfections or non-monetary encumbrances which are of such a nature as do not, singly or in the aggregate, materially detract from the value of the Assets for the purposes used, or interfere with the present or continued use of the Assets." In support of their argument that the alleged unlawful disposal of hazardous wastes on the properties in issue here does not constitute an "encumbrance" on appellee's title, appellants refer this court to Georgia authorities and assert that in this state there is no remedy under a warranty of title for a defect in the condition of the property.

We are not, however, called upon here to decide whether as a matter of law in Georgia the conveyance to an unknowing purchaser of property contaminated by hazardous wastes constitutes an "encumbrance" so as to constitute a breach of the warranty of title, since the properties in issue uncontrovertedly lie in New York, and, as noted earlier, the purchase agreement specifically provides that it "shall be construed in accordance with the laws of the State of New York." Thus, the question presented is not whether Georgia law would authorize appellee to recover under these circumstances for the above breach of title, but whether appellants have carried their burden of proving that they are entitled to summary judgment on this issue because as a matter of New York law, appellee cannot recover. Contrary to appellants' argument, we find appellee gave reasonable written notice of its intent to rely upon New York law on this matter pursuant to OCGA § 9-11-43 (c).

In support of its argument that New York recognizes a claim for breach of warranty of title under a situation similar to that presented here, appellee cites this court to *P. B. N. Assoc. v. Xerox Corp.*, 529 NYS2d 877 (AD 2 Dept. 1988), involving a lease agreement with a warranty that the tenant "had committed no act which would cause the lessor or the premises to be 'impeached, charged, claimed against, encumbered, burdened or suffer any loss or damage.'" Id. at 879. The tenant, upon discovering that contaminants had leaked into the soil from its storage tanks, voluntarily notified the New York Department of Environmental Conservation ("DEC") and offered immediately to clean up the contamination. The tenant and the DEC then entered into a consent order requiring the tenant to restore the property and file a declaration along with the property title indicating that any successor in title to any portion of the property would be responsible for implementing the provisions of the consent order. Based on the fact that the tenant had caused the contamination and that contamination led to the consent order requirement that the tenant obligate all successors in interest to the property to implement the cleanup of the property, the New York court held that the warranty clause had been breached.

We acknowledge that there are several noticeable differences between the case at bar in its present posture and *P. B. N. Assoc.*, supra, such as in the varying warranty languages and the relationships between the parties. The primary distinguishing factor, however, is the absence here of any current obligation on the titles to the properties in issue comparable to that in the consent order in *P. B. N. Assoc.* Review of the copies of suits pending against appellee, Abalene, and appellant Blank reveals that the State of New York and local authorities seek, inter alia, reimbursement for "all past, present, and future damages to the wildlife, soil, groundwater, wetlands, and

other natural resources . . . resulting from the contamination," and entry of judgment "directing defendants to completely and permanently abate the nuisance" caused by the contamination "by taking such actions as the Court shall find to be necessary . . . including, but not limited to: . . . carrying out a program to terminate all migration of hazardous and chemical wastes, and restoration of the site" as well as "to determine and remedy the effects of exposure on the citizens and residents and public," "provide forthwith an alternate and permanent water source for the area," and "to restore the damaged portion of the [Fort Edward] aquifer." It does not appear that any consent order has been executed or that any plaintiff has specifically sought to have the titles to the properties in issue be encumbered by placing on successors in interest any obligations which may eventually devolve on appellee, as record title owner, regarding the restoration of the properties.

We are not prepared to state, however, that as a matter of law appellee will not be able under *any* circumstances to assert and recover for the alleged breach of warranty of title under New York law. Questions of fact remain whether appellants knew about the burial of the pesticides on the Fort Edward property; thus, it cannot now be determined whether or not appellants knew the title to the Fort Edward property which they had warranted was or could be subject to an encumbrance like that in *P. B. N. Assoc.*, supra, recognized under New York law as constituting a breach of a title warranty. And in view of the future nature of many of the remedies sought by the plaintiffs in the above law suits, factual issues remain whether any liabilities that may be imposed upon appellee will also be imposed on any successors in interest to the properties involved so as to constitute an encumbrance breaching the title warranty under New York law. Due to the uncertainty whether pivotal factual components in the cited New York case law will manifest themselves in the case at bar, any ruling on this issue would be premature. Giving appellee as respondent the benefit of all reasonable doubts and all reasonable inferences, see generally *Blount v. Seckinger Realty Co.*, 167 Ga. App. 778, 779 (1) (307 SE2d 683) (1983), we find the trial court did not err by denying appellants' motion for summary judgment as to appellee's claim under paragraph 3.03 (a) of the purchase agreement.

6. Appellee has asserted three tort claims against appellants for negligence, negligent misrepresentation, and fraud. Appellants contend in their final enumeration that the trial court erred by denying their motion for summary judgment as to these claims "because it is undisputed that the sole factual basis for those tort claims, as established by the testimony of [appellee's] designated representatives at deposition . . ., is the alleged breach of the same two contractual provisions upon which [appellee's] contract claims are based." Thus, ap-

pellants' enumerated error is that the deposition testimony of appellee's officers, in particular that of Raymond, established that appellee's claims against them are based on nothing more than appellee's contentions that the properties failed to comply with the contractual provisions in the purchase agreement. Raymond's testimony, however, fails to support appellants' contention. Construed most strongly on behalf of appellee as respondent, see generally *Echols*, supra, Raymond's testimony did not constitute an admission by appellee that its sole legal claims were based in contract and that it had no cause of action for fraud, negligence, and negligent misrepresentation. Rather, the obvious import of his testimony was that appellants either knew or should have known about the improper disposal of the pesticides on the three properties, and that the instant lawsuit between the parties would not have arisen had appellee not purchased these properties from appellants. "It is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. [Cits.]" *Orkin Exterminating Co. v. Stevens*, 130 Ga. App. 363, 365 (203 SE2d 587) (1973). Nothing said by Raymond in his deposition or any other officer of appellee has foreclosed appellee as a matter of law from pursuing its tort claims against appellants.

Appellants filed a supplemental brief addressing the merits of the tort claims in response to objections raised by appellee in its brief to the above enumeration. Even assuming, arguendo, that these arguments do not improperly enlarge the issue presented by appellants' enumeration, but see *A. L. Williams & Assoc. v. Faircloth*, 190 Ga. App. 872, 878-879 (1) (380 SE2d 471) (1989), in view of the uncontroverted evidence that employees of appellants buried pesticides on one of the properties included in the purchase agreement and the conflicting evidence whether appellants knew about the improper burial prior to the execution of the purchase agreement, we find that appellants have failed to carry their burden on motion for summary judgment of proving that they are entitled to judgment as a matter of law because no genuine issues of material fact remain as to appellee's tort claims. Accordingly, the trial court did not err by denying appellants' motion on these issues. See generally *Lynch*, supra at 225.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Banke, P. J., Birdsong, Pope and Cooper, JJ., concur. Deen, P. J., concurs specially. Carley, C. J., and Beasley, J., dissent.*

DEEN, Presiding Judge, concurring specially.

While concurring with Divisions 1, 2, 3, 4, and in the judgment, I cannot concur with all that is said in Divisions 5 and 6. The case of *A.*

*L. Williams & Assoc. v. Faircloth*, 190 Ga. App. 872, 878-879 (1) (380 SE2d 471) (1989), is cited as authority. The cited case was a one-judge case, with two judges concurring in the judgment only. Further, portions of the case were overruled in *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767, 769 (386 SE2d 151) (1989).

CARLEY, Chief Judge, dissenting.

I concur in the conclusions of the majority with the exception of Division 5. Because I believe that the trial court erred in denying appellant's motion for summary judgment as to any and all claims arising under paragraph 3.03 (a) of the purchase agreement, I must dissent to the majority's affirmance of that part of the judgment of the trial court.

As set forth in the majority opinion, paragraph 3.03 (a) warrants that appellants have "good and valid *title* to the Assets, free and clear of any lien, security interest, charge, or other encumbrance except for minor imperfections or non-monetary encumbrances which are of such a nature as do not, singly or in the aggregate, materially detract from the value of the Assets for the purposes used, or interfere with the present or continued use of the Assets." (Emphasis supplied.) This is a standard warranty of title provision that relates to the appellants' power and authority to convey good title to the property. The claims of appellee in this case are based upon alleged unlawful disposal of hazardous waste on the properties. Even assuming the truth of all of the allegations concerning the condition of the property as a result of appellants' actions, such condition would not constitute impairment of the title, nor would it be considered a "lien, security interest, charge, or other encumbrance" against the property.

The only New York authority relied upon by appellee or the majority is *P. B. N. Assoc. v. Xerox Corp.*, 529 NYS2d 877 (AD 2 Dept. 1988). In its attempt to strain and stretch *P. B. N. Assoc.* so as to support the denial of the motion for summary judgment in this case, the majority has had to acknowledge that "there are several noticeable differences between the case at bar" and that New York decision. I submit that the majority's discussion of these "differences" shows without dispute that *P. B. N. Assoc.* is distinguishable and inapposite. First and foremost, the clause applicable in the case sub judice is clearly only a warranty of title provision. To the contrary, the provision involved in *P. B. N. Assoc.* constituted a warranty that the aggrieving party "had committed *no act* which would cause the [aggrieved party] or the premises to be 'impeached, charged, claimed against, encumbered, burdened *or suffer any loss or damage.*' " (Emphasis supplied.) *P. B. N. Assoc. v. Xerox Corp.*, supra, 879. The applicable clause in this case does not warrant that appellants have committed "no act" which would cause appellee to "suffer any loss or

damage." Also, as admitted by the majority, there has been no consent order or other document which could in any way affect the *title* to the property involved. The majority's affirmance of the denial of the summary judgment in view of the "future nature of many of the remedies sought by the plaintiffs" is tenuous and speculative. Quite simply, the record in this case shows without doubt that appellee cannot prove that appellants breached the warranty of title clause of the agreement between the parties. Summary judgment should have been granted as to this issue and I respectfully dissent.

I am authorized to state that Judge Beasley joins in this dissent.

### ON MOTION FOR REHEARING.

On motion for rehearing appellee Orkin contends that in a record exceeding 2,000 pages, we have overlooked evidence not cited by either party which appellee argues pierced appellants' affirmative defenses so as to render our holding in Division 4 (a) incorrect. This evidence is in the form of answers by appellants to appellee's second interrogatories. The trial court recited that its judgment was based upon "review of the file of record." A painstaking review of that record both by this court and by the trial court's clerk's office reveals that while the answers are twice present in the record, the interrogatories themselves were never filed. The answers do not reference the questions, and there is nothing in the deposition of appellant Blank, who was presented with those answers, to intimate what information the interrogatories sought in regard to the affirmative defenses in question. Although appellee in its brief quotes interrogatories which it alleges are the questions to the answers in the record, " '[w]e cannot consider facts, related by briefs, which do not appear in the record sent up from the clerk of the lower court.' [Cit.]" *Johnson v. Shield Ins. Co.*, 189 Ga. App. 333, 334 (375 SE2d 510) (1988). Thus, whatever significance the answers allegedly may have when read together with the interrogatories, in the absence of the interrogatories it is readily apparent that the answers are not sufficient in and of themselves to pierce appellants' affirmative defenses. Since this is not a situation in which we can construe interrogatory answers to uphold the judgment by presuming the questions propounded were asked in a form so as to authorize the judgment, compare *Heard v. McKee*, 26 Ga. 332, 342 (1858), appellee's motion for rehearing is denied.

DECIDED JUNE 25, 1990.
REHEARING DENIED JULY 18, 1990.

*Long, Aldridge & Norman, J. Allen Maines, John L. Watkins,*

for appellants.

*Decker & Hallman, Richard P. Decker, W. Winston Briggs*, for appellee.