A92A1166, A92A1167. FAIRCLOTH v. A. L. WILLIAMS & ASSOCIATES, INC. et al.; and vice versa.
(426 SE2d 601)

BIRDSONG, Presiding Judge.

This is the second summary judgment appeal in this case. See *A. L. Williams & Assoc. v. Faircloth*, 190 Ga. App. 872 (380 SE2d 471), reversed in part and affirmed in part, *A. L. Williams & Assoc. v. Faircloth*, 259 Ga. 767 (386 SE2d 151).

Norman Tee Faircloth was a Senior Vice-President (SVP) and Regional Vice-President (RVP) of A. L. Williams & Associates, Inc. (Williams) an insurance agency, for sale of insurance for Massachusetts Indemnity & Life Insurance Company (MILICO). There were three agreements among the parties: the agency agreement between Faircloth and MILICO and the RVP and SVP agreements between Faircloth and Williams; Faircloth was earning override commissions on the sales of 40,000-60,000 sub-agents; his employment was terminated in 1982; he allegedly solicited agents of Williams for a new business; Williams terminated his commissions for breach of non-compete covenants; Faircloth filed this suit. The complaint alleges breach of contract, fraudulent termination of contracts, tortious interference with contracts and conversion of commissions. The trial court granted Faircloth's motion for partial summary judgment, holding that the non-compete provisions were invalid for being overbroad, but that they were valid insofar as they served as a condition to entitlement to contract benefits including commissions.

In that first appeal we held that as to " 'fraudulent termination' of . . . contracts[,]" the trial court correctly denied summary judgment to Williams, because under the SVP agreement Williams could terminate Faircloth only for cause or by agreement, and Williams was fiduciary agent for Faircloth and a jury might find Williams abused its agency by damaging Faircloth to its benefit. See 190 Ga. App. at 874 (1). But, the Supreme Court reversed our ruling on a supervening rationale that Williams could not be liable for breach of contract of the agency and RVP contracts for a termination without cause because Williams was entitled thereunder to terminate Faircloth for any

reason or no reason; that moreover the breach of contract does not give rise to a tort, so there is no cause of action for fraudulent termination; therefore, the only issue as to termination is breach of contract of the SVP contract for termination without cause. See 259 Ga. at 769 (3), 770, fn. 5.

As to the claim that Williams tortiously interfered with relations of MILICO and Faircloth, we held that on account of the fiduciary agency relations between Williams and Faircloth a jury could find Williams acted outside its powers in notifying MILICO to terminate Faircloth. But, the Supreme Court held in a supervening rationale that Faircloth's agency agreement with MILICO provides that Williams " 'has the express right to notify the Company to terminate this Agreement[,]' " and Williams could not be liable for what it has the right to do. 259 Ga. at 769.

On the claim that Williams converted Faircloth's commissions, the trial court ruled that under *Kem Mfg. Corp. v. Sant*, 182 Ga. App. 135 (355 SE2d 437), " 'defendants could not deny plaintiff his benefits based upon any breach of covenant which this court has found to be overbroad and unenforceable. . . .' " 190 Ga. App. at 876. We affirmed the ruling. The Supreme Court affirmed, saying: " 'While forfeitures are not unlawful, the law does not favor them, and all ambiguities in a contract are to be resolved against their existence.' [Cit.] It would be paradoxical to strike down a covenant as invalid, and at the same time uphold a forfeiture that is conditioned upon a violation of that very covenant. Hence, a forfeiture provision that is conditioned expressly upon an invalid covenant must be invalid *in se*. Any earlier propositions of law to the contrary are disapproved." 259 Ga. at 767-768. "The trial court [held] . . . that Faircloth's entitlement to renewal commissions was not forfeited by his violation of the invalid covenants [id. at 767 (1) (a)]. . . . The trial court did not err." Id. at 768 (b).

On remand from the Supreme Court we vacated Divisions 1 and 2 of our decision in 190 Ga. App. 872, supra, to the extent that they were inconsistent with the Supreme Court's decision, and we remanded to the trial court. *A. L. Williams & Assoc. v. Faircloth*, 194 Ga. App. 324 (391 SE2d 143).

The result of those appeals was to remove the counts for fraudulent termination of contracts, breach of the agency and RVP contracts for improper termination and tortious interference. The issues then left pending in the trial court were: breach of the SVP contract by termination without cause; breach of contracts for failure to pay commissions; conversion of commissions.

Williams made another motion for summary judgment on the grounds that since the restrictive covenants in the contracts are invalid and we had held that provisions conditioned thereon also fail, then

not only the forfeiture of benefit provisions must fail but the payment provisions must also fail. Williams further asserted that by merely seeking to recover an alleged contract indebtedness, not chattels, Faircloth fails to state a cause of action for conversion, per *Hodgskin v. Markatron*, 185 Ga. App. 750 (365 SE2d 494).

Faircloth made a cross-motion for summary judgment asserting that Williams did not in fact render an effective termination, because Williams did not file a notice of termination for cause with the Georgia Insurance Commission. Faircloth also filed an affidavit averring that Mr. A. L. Williams stated that he had personally received the wealth Faircloth would have received if he had stayed, which Mr. Williams estimated at $25-50 million.

The trial court denied summary judgment to Williams on its contention that the payment provisions of the contracts fail along with the restrictive covenants, and granted summary judgment on the contention that Faircloth could not maintain a claim for conversion of money owned under a contract. The trial court also denied Faircloth's motion for summary judgment as to the contention that Williams did not terminate Faircloth because it did not file a notice with the insurance commissioner. *Held*:

### Case No. A92A1166

1. We are constrained to hold that the trial court correctly granted partial summary judgment to Williams as to conversion, ruling that an action for conversion would lie only for withholding of "certain bills or coins" and does not lie on account of a mere failure to pay money under the contracts, under the decisions of *Cooke v. Bryant*, 103 Ga. 727 (30 SE 435) and *Hodgskin v. Markatron*, supra at 751 (1). Compare, however, *DCA Architects v. American Bldg. Consultants*, 203 Ga. App. 598, 600 (2) (417 SE2d 386). It was held that a breach of contract does not by itself give rise to a discrete action for tort; the allegations that a tort was committed add nothing of substance to the breach of contract claim and are mere surplusage (*A. L. Williams & Assoc. v. Faircloth*, 259 Ga. at 769-770, supra); however, we frequently allow separate claims that might be loosely called "surplusage," as long as they constitute recognized claims. A failure to pay money under contract might, like conversion, be an " ' "unauthorized assumption and exercise of the right of ownership over personal property belonging to another, in hostility to his rights; an act of dominion . . . or an unauthorized appropriation" ' " (*DCA Architects*, supra), so as to "add something" considerable in the nature of a tort, somewhere between or beyond breach of contract and bad faith breach of contract. But according to *Cooke*, supra (and see 28 EGL, Trover & Conversion, § 11 (1992 rev.)), an action for conversion will

lie only for appropriation of discrete physical things. But see Prosser & Keeton on Torts, § 15, Conversion, pp. 90-92 (5th ed.) which implies this may be too great adherence to the original common law which related actions of trover for conversion only to tangible things that may be "lost" and "found," and that there may be no very valid reason for this distinction, considering today's increasing use of intangible ideas of assets, including an ordinary debt, as personal property.

Messrs. Prosser and Keeton, calling conversion "a fascinating tort [which] has largely eluded the attention of legal writers" (id. at 88), conclude that rather than calling the taking or keeping of "intangible assets" conversion, it would seem preferable to fashion other remedies to protect people from having "intangible values" being used and appropriated in unfair ways. Id. at 92. Our courts have not found it necessary to limit parties to one remedy, as a principle.

Recently, an action for conversion of certificates of deposit by an executor was "condoned" by the Georgia Supreme Court, in *Hudson v. Abercrombie*, 258 Ga. 729 (374 SE2d 83); a certificate of deposit is a physical piece of paper, but what those plaintiffs sought to recover for was conversion of the money which the pieces of paper represented. As to conversion generally, as a distinct act of dominion wrongly asserted over one's property, see *Maryland Cas. Ins. Co. v. Welchel*, 257 Ga. 259 (356 SE2d 877) and cits. It would seem the gist of the tort is an act of hostile dominion or appropriation, and is not merely a matter of whether the property appropriated was tangible or intangible. The line is very fuzzy in modern times. Today, many forms of property may be evidenced only by a notation in a computer, but it is property nevertheless.

The legislature has described the crime of conversion as occurring when "a person . . . having lawfully obtained *funds* or other property of another *including, but not limited to,* leased or rented personal property, under an agreement or *other known legal obligation to make a specified application of such funds* or a specified disposition of such property, he knowingly converts the funds or property to his own use in violation of the agreement or legal obligation. This Code section applies whether the application or disposition is to be made from the funds or property of another *or from the accused's own funds or property in equivalent amount* when the agreement contemplates that the accused may deal with the funds or property of another as his own." (Emphasis supplied.) OCGA § 16-8-4 (a); and see (b). See also OCGA §§ 11-3-419; 11-3-102 (1) (e).

It seems, further, that if this money is in fact owed by contract to Faircloth, and *if it was represented by some form of "receipt" or "certificate"* (see *Vaughn v. Wright*, 139 Ga. 736 (78 SE 123); and see *Hudson*, supra) then it might, under current law, be considered his "tangible" property when defendants allegedly took money from the

insurance customers and sub-agents, and "kept" such receipt or certificate or non-fungible item. In this sense, the money is tangible, not an "intangible asset," and the appropriation of it may fit the description given in *DCA*, supra. Being unaware of any such allegation, however, we are bound by *Cooke v. Bryant*, to hold that this contract debt, not being "certain" coins and bills, or some other certain physical thing representing moneys, was not subject to an act in tort for conversion. We do not think that under the present civil law we can say the contract itself was that discrete physical thing representing Faircloth's moneys, so as to be subject to an action for conversion.

Faircloth says he can maintain an action for conversion because "Williams was Faircloth's agent in directing where Faircloth's money was to go under the contracts or to send it on to him in the event Faircloth's money went to Williams." See 190 Ga. App. at 874. Faircloth contends the failure to do this was a violation of the private legal duty imposed on an agent not to appropriate his principal's property. See OCGA § 53-13-84 (repealed by Ga. L. 1991, p. 810, § 1, effective July 1, 1991); see OCGA § 51-1-1. However, assuming Williams was Faircloth's agent and fiduciary and that it was bound to pay Faircloth the commissions, these are all obligations arising out of and by reason of the contracts, subject to the same limitations on the issue of what it was that was "converted," noted above. The allegation that Williams was Faircloth's agent or fiduciary really adds nothing toward creating a claim for conversion. See *A. L. Williams & Assoc.*, 259 Ga., supra. That there might exist an independent legal duty on Williams as Faircloth's agent does not alter the present rule that conversion involves chattels, not failure to pay money owed under a contract; the breach of fiduciary duty alleged here is conversion of the same moneys for which breach of contract is claimed. See *Management Compensation Group v. United Security Employee Programs*, 194 Ga. App. 99, 104 (389 SE2d 525).

Accordingly as to Williams' failure to pay commissions, we are bound to hold that the claim extant is for breach of contract for failure to pay commissions and that he cannot maintain an action for conversion of that money owed under his contract.

2. The trial court did not err in denying summary judgment to Faircloth, which Faircloth sought on grounds that no termination of the SVP contract had been effected because Williams did not file a notice of termination with the insurance commissioner in accordance with an insurance regulation then existing. According to Faircloth, Georgia Insurance Regulations were made a part of the agreement between Faircloth and the insurer MILICO; former Rule 120-2-3-.10 provided: "Each insurer qualified to do business in Georgia, upon terminating the services of its agents with cause or prejudice," shall file with the Insurance Department form G.I.D.A.-105. But even assum-

ing this requirement was material to successful termination for cause as between the "insurer" and its agent, both the agency contract between Faircloth and MILICO and the RVP contract were properly terminated "without cause" (259 Ga. at 769 (3)), so notice to the commissioner was not required to be filed on account of the termination of those contracts. The requirement that an "insurer" notify the commissioner upon terminating the services of its agents with cause does not apply to the termination by Williams of the contract of its SVP contract; that is, termination of the SVP contract was done by the insurance agency Williams, and not by the "insurer." This enumeration of error by Faircloth is without merit.

### Case No. A92A1167

Cross-appellant Williams contends that the same principle which forbids reliance on invalid restrictive covenants so as to work a forfeiture (see 259 Ga. at 767-768; 190 Ga. App. at 876-877), likewise defeats any provision for payment of commissions conditioned on those covenants. Williams relies on *Kem Mfg. Corp.*, supra, arguing that the contracts in this case "mandate a finding that the parties intended the payment provisions to be expressly conditioned on plaintiff's observance of the restrictive covenants" and "that the parties did not intend for the payment provisions to be enforceable independently of plaintiff's observance of these covenants." Id. at 140. Thus, says Williams, if the restrictive covenants fail, the payment provisions fail.

It is not certain how much of *Kem Mfg. Corp.* has been disapproved by the Supreme Court. See 259 Ga. at 768, fn. 1. Moreover, the dicta just quoted referred to a settlement agreement entered into after termination of the employee's services, as to which the payment of moneys was "expressly conditioned on plaintiff's observing certain restrictive covenants. . . ." *Kem Mfg. Corp.*, supra at 136. That is not true of the provisions in this case. The bargain included Faircloth's agreement to devote his evidently considerable talents to the endeavors of the Williams agency, and it was not conditioned merely upon his observance of restrictive covenants. The provisions cited by Williams mandate a conclusion that Faircloth's right to receive certain commissions accrued on account of his serving as SVP of the agency and on account of his performance of services in managing and motivating sub-agents in the procurement of sales and commissions while he was employed by Williams, that this was a "vested" right which extended into the specified future, and that this right to receive certain commissions in the future was a considerable basis for Faircloth's agreeing to be employed by Williams. These provisions were operative from the time Faircloth was employed and were made in considera-

tion of his being employed, and not in consideration of his having been terminated, as was the case in *Kem Mfg. Corp.* The basis of payment in *Kem Mfg. Corp.* was compliance with the restrictions. "[S]ubsidiary provisions will not, *unless their terms imperatively demand it*, be given a construction that will nullify and completely destroy the entire obligations of either party under the instrument and thus render the instrument lacking in mutuality and void. . . . [W]here the agreement is founded on a legal consideration containing a promise to do several things or to refrain from doing several things, and some only of the promises are illegal, the promises which are not illegal will be held to be valid. [Cits.]" (Citations and punctuation omitted.) Id. at 140.

The promise of commissions not being conditioned solely on Faircloth's compliance with the restrictive covenants, it does not fail because those covenants fail. To say otherwise would allow the employer to impose restrictions in illegal restraint of trade by conditioning payment for services on the employee's observance of illegal covenants, contrary to the spirit and intent of the law on illegal restraint of trade.

The statements by the Supreme Court and this court in the previous appeals as to a forfeiture brought about as a "penalty" for the party's failure to observe illegal restrictions in restraint of trade are engendered not only by dislike of such restrictive covenants but also by dislike of forfeiture; this abhorrence is compounded when the requirement to abide by a covenant in illegal restraint of trade brings about the forfeiture. To say a party "will not be paid" for his labors unless he abides by illegal restrictive covenants after termination of employment is much the same thing as saying that a party "forfeits" what he is paid. This is not a favored result. Accordingly, unless the contract is crystal clear and unambiguous, we will not interpret provisions as to payment of benefits related to employment services as being destroyed because they were conditioned on observance of illegal restrictive covenants. See *Kem Mfg. Corp.*

In particular, Williams points to provisions which provide for "divestment" of benefits and contends this proves the parties did not intend that Faircloth be paid unless he complied with the restrictive covenants. What it proves, rather, is that the provision was attempting to work a forfeiture of payments which had vested, and it reinforces the conclusion that such divestment provisions are an attempt at forfeiture.

We are compelled to note that if what Williams says here were true, that is, that the agreement for Faircloth to devote his services and special talents to Williams was not in exchange for certain commission payments but such payments were instead conditioned on performance of illegal restrictive covenants, then the agreement for

Faircloth to be remunerated for his services would be nudum pactum, in which case a claim quantum meruit might lie for commissions on policies sold by Faircloth and sub-agents in his hierarchy according to the actual services performed by Faircloth as RVP and SVP managing some 40,000 insurance agents, which might extend in terms of time and payability far beyond the provisions in the contracts.

*Judgments affirmed. Beasley and Andrews, JJ., concur.*

DECIDED DECEMBER 1, 1992 —
RECONSIDERATION DENIED DECEMBER 16, 1992 ▮

*Gambrell, Clarke, Anderson & Stolz, Irwin W. Stolz, Jr., Seaton D. Purdom*, for appellant.

*Chilivis & Grindler, Nickolas P. Chilivis, Gary G. Grindler, John K. Larkins, Jr., Thomas D. Bever, Stanton J. Shapiro*, for appellees.