### ROBERT BOWDEN, INC.

v.

### AETNA CASUALTY AND SURETY COMPANY and Aetna Casualty Company of Connecticut.

Civil No. 1:97–CV–244–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 8, 1997.

---

William R. Johnson, Jere C. Smith, Moore, Ingram, Johnson & Steele, Marietta, GA, for Plaintiff.

Walter B. McClelland, Jo Beth Gosdeck, Chambers, Mabry, McClelland & Brooks, Altanta, GA, William T. Corbett, Jr., Melissa L. Klipp, Shanley & Fisher, Morristown, NJ, for Defendants.

## ORDER

ORINDA D. EVANS, District Judge.

In this diversity civil action, Plaintiff seeks a declaration that Defendants are obligated to defend and indemnify Plaintiff in connection with a lawsuit allegedly covered under the terms of a commercial liability insurance policy. The case is currently before the court on Defendants' motion for summary judgment, Plaintiff's cross-motion for summary judgment, and Defendants' motion for oral argument. The parties have responded to each other's motions.

The basic facts are undisputed. On August 1996, a federal lawsuit was filed against Plaintiff Robert Bowden, Inc. ("RBI") by three computer software companies. Plaintiffs in that action ("the *Corel* suit") alleged three counts of copyright infringement, pursuant to 17 U.S.C. § 101 *et seq.*, for RBI's alleged unauthorized duplication of copyrighted software onto the hard disks of many of its personal computers. The *Corel* plaintiffs sought injunctive and monetary relief, costs, and attorneys' fees.

Shortly after receiving service of the *Corel* complaint, RBI tendered the defense of the *Corel* suit to its commercial liability insurer, Defendant Aetna. Upon review of the *Corel* complaint in conjunction with the insurance policies Aetna had issued to RBI, Aetna denied any obligation to defend the suit or indemnify RBI.

Prior to trial, the parties settled the *Corel* suit for $32,500.00. On December 2, 1996, RBI filed the instant suit seeking a declaratory judgment against Aetna. RBI argues that the costs it incurred in defending and settling the *Corel* suit fall within its insurance policy's coverage for liability stemming from "property damage" and/or "advertising injury." In other words, RBI claims that the

copyright infringement alleged in the *Corel* suit qualifies as covered "property damage" or "advertising injury."

The insurance policies owned by RBI cover both general and excess commercial liability. (*See* Compl. Ex. A.) Both the general liability ("Primary") policy and the Excess Policy provide coverage for liability arising from bodily injury, property damage, personal injury, and advertising injury. (Prim. Pol'y at I(A)(1)(a) & (B)(1)(a); Excess Pol'y at I(A)(1).) In essence, the policies obligate Aetna to defend and indemnify RBI in connection with any lawsuit alleging such injury or damage. (*Id.*)

The Primary Policy's Definitions section defines "property damage" to be 1) "[p]hysical injury to tangible property, including all resulting loss of use of that property" or 2) "[l]oss of use of tangible property that is not physically injured." (*Id.* at V(12).) The Excess Policy defines "property damage" simply as "physical injury to tangible property, including all resulting loss of use of that property." (*Id.* at V(12).) Thus, in order to constitute "property damage" under the policies, the alleged damage must have been visited upon tangible property.

As to "advertising injury," the Primary Policy's coverages section specifies that "this insurance applies to ... 'advertising injury' caused by an offense committed in the course of advertising your goods, products or services." (*Id.* at I(B)(b)(2).) The Primary Policy's Definitions section defines "advertising injury" as "injury arising out of one or more of the following offenses" and goes on to list "infringement of copyright, title, or slogan" as one of those enumerated offenses. (*Id.* at V(1).) The Excess Policy's Definitions section defines "advertising injury" using precisely the same language as the Primary Policy's Definitions section. At the end of the definition it is stated, as in the Primary Policy's Coverages section, that the "offenses" which precipitate such advertising injury "must be committed in the course of advertising your goods or products." (*Id.* at V(1).)

In support of its motion for summary judgment and in opposition to Plaintiff's cross-motion, Aetna argues that neither the Pri-

mary nor the Excess policy provides coverage with respect to the *Corel* suit because 1) a copyright is not "tangible" property and thus copyright infringement does not constitute "property damage" within the meaning of the policies; and 2) RBI's alleged pirating of software was not performed "in the course of advertising" and thus does not qualify as an "advertising injury." RBI, in support of its cross-motion and in opposition to Aetna's motion, contends that a copyright is indeed tangible property and that its alleged unlawful copying of software was actually performed while conducting advertising activities.

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling on summary judgment, the court must view the evidence in a light most favorable to the non-movant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). To prevail on a motion for summary judgment, the moving party must show that the evidence is insufficient to establish an essential element of the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the movant makes a sufficient showing, then the non-movant "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Fed. R.Civ. P. 56(e)). If the evidence supporting the non-movant's claims is insufficient for a jury to return a verdict in his favor or is merely colorable or not significantly probative, then the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). If, however, reasonable minds could differ as to the import of the evidence, and a reasonable interpretation of the evidence could lead to a verdict for the non-movant, then summary

judgment is inappropriate. *Id.* at 251–52, 106 S.Ct. at 2511–12.

■ In a diversity action, a federal court must apply the substantive law of the forum state. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). The parties agree that Georgia contract law governs the disposition of this case. Under Georgia law, a court's task in giving meaning to a contract is to glean the intent of the parties at the time the contract was executed. *Jones v. Destiny Indus., Inc.,* 226 Ga.App. 6, 6, 485 S.E.2d 225 (Ct.App.1997). Unambiguous provisions of an insurance contract are deemed to reflect the intent of the parties, and, therefore, the parties to an insurance contract are bound by the policy's plain and unambiguous terms, *Richards v. Hanover Ins. Co.,* 250 Ga. 613, 614, 299 S.E.2d 561 (1983). But if the terms of the policy are ambiguous, the court, in construing such terms, should normally resolve doubts in favor of the insured. *Damar, Inc. v. U.S. Fire Ins. Co.,* 856 F.Supp. 679, 681–82 (N.D.Ga.1993), *aff'd,* 21 F.3d 1126 (11th Cir. 1994). This principle, however, " 'cannot be carried to the point of extending the coverage to make the policy something different than contemplated,' " *Lazzara Oil Co. v. Columbia Cas. Co.,* 683 F.Supp. 777, 781 (M.D.Fla.1988) (citations omitted), *aff'd,* 868 F.2d 1274 (11th Cir.1989). *Accord Monarch Ins. Co. v. Polytech Indus., Inc.,* 655 F.Supp. 1058, 1063 (M.D.Ga.1987), *aff'd,* 833 F.2d 1020 (11th Cir.1987). Finally, in cases involving liability insurance, whether coverage exists depends solely on the allegations of the underlying suit against the insured. *Penn–America Ins. Co. v. Disabled Am. Veterans, Inc.,* 224 Ga.App. 557, 562–63, 481 S.E.2d 850 (1997); *State Farm Fire & Cas. Ins. Co. v. White,* 777 F.Supp. 952, 953–54 (N.D.Ga. 1991).

■ As discussed above, the Aetna policies define property damage solely in relation to "tangible" property. Because the *Corel* complaint alleges only copyright infringement, insurance coverage for RBI's liability will qualify as property damage only if a copyright is characterized as tangible property.

Black's Law Dictionary defines "copyright" as "[a]n intangible, incorporeal right granted by statute to the author or originator of certain literary or artistic productions," Black's Law Dictionary 336 (6th ed.1990). Black's goes on to state that "[c]opyright protection subsists in original works of authorship fixed in any tangible medium of expression ... from which they can be perceived, reproduced, or otherwise communicated," *id.* Therefore, a copyright itself is intangible, while the medium upon which a copyrighted work is recorded is tangible.

RBI, in arguing that a copyright is a tangible property interest, cites *Turner Communications Corp. v. Chilivis,* 239 Ga. 91, 236 S.E.2d 251 (1977). In *Turner,* the Georgia Supreme Court held that videotape containing copyrighted material was a tangible property interest subject to sales tax on its lease to television stations for use in programming. In analyzing the videotapes, the court identified "at least three separate property interests: the tangible magnetic tape itself, the limited copyright license, and the program which has been encoded upon the magnetic tape," *id.* at 92, 236 S.E.2d 251. The court went on to emphasize that the program was a property interest distinct from the copyright, even though the value of the program was almost wholly derived from the copyright. *Id.* In finding the tax applicable to the videotapes, the court described its holding as following a "line of cases [which support] the proposition that film or video tape 'is the subject of the transaction and that a license to exhibit or broadcast without the tangible finished product itself would be valueless,' " *id.* (citation omitted). Therefore, the *Turner* holding seems to have been based primarily on the fact that the taxable transaction—the transfer of videotapes with programs recorded on them—involved at least some tangible property interest.

The court finds that the case at bar is distinguishable from *Turner.* Unlike the transaction at issue in *Turner,* which unquestionably involved an exchange of tangible property, the damage alleged in the *Corel* suit is solely with respect to the copyright itself. The *Corel* plaintiffs were not alleging any damage to the actual computer disks or even the programs on those disks. Rather,

they alleged damage to the rights which inhered in their copyrights.

This distinction is emphasized in a more recent case applying Georgia insurance law in a factual scenario similar to that in this case. In *State Farm Fire & Cas. Ins. Co. v. White*, 777 F.Supp. 952 (N.D.Ga.1991), the district court examined the argument that, for purposes of showing "property damage" under a policy which defined property damage in relation only to "tangible" property, an underlying suit alleging conversion of copyrighted architectural plans constituted a claim for the loss of use of tangible property.[1] The court held that the only tangible component of the architectural plans was the paper and ink used to memorialize those plans and thus that the insurance policy covered the conversion action only to the extent of the value assigned to the paper. *Id.* at 955. In other words, the copyright itself was intangible property not subject to coverage under the policy.

In this case, as the *Corel* plaintiffs allege damage only to their copyright interests and not to the tangible computer disks or programs on them, their suit concerns damage to intangible property only and thus is not covered under the Aetna insurance policies. This finding that copyright infringement is not encompassed within the meaning of "property damage" is further bolstered by the fact that, as set forth above, copyright infringement is specifically mentioned in the Aetna policies in connection with advertising injury. Specific enumeration of copyright infringement as a possible form of advertising injury leads the court to conclude, by negative implication, that such offense was not intended to fall within the meaning of "property damage."

■ RBI advances an alternative theory in contending that the *Corel* suit alleges property damage. RBI argues that the *Corel* plaintiffs, in seeking damages for business losses attributable to RBI's copyright infringement, are alleging the loss of use of money, a tangible asset. A finding that the term "property damage" encompasses lost earnings or business losses would plainly " 'make the policy something different than contemplated,' " *see Lazzara*, 683 F.Supp. at 781 (citations omitted), and thus the court declines to so find.[2]

Having disposed of the "property damage" issue, the second and final issue is whether the alleged copyright infringement qualifies under the Aetna policies as "advertising injury." As stated above, both the Primary and Excess policies provide coverage for "advertising injury," and copyright infringement is indeed one of the four enumerated "offenses" which may constitute such "advertising injury." However, such "offenses," in order to qualify as "advertising injury," must have been committed "in the course of advertising."

■ As an initial matter, RBI argues that only the Excess Policy limits the scope of "advertising injury" to those offenses committed in the course of advertising. This proposition is based upon the observation that the definition of "advertising injury" in the Primary Policy is silent as to the requirement that such offenses be committed while advertising. However, as set forth above, the Primary Policy's Coverages section does include this explicit requirement: "[t]his insurance applies to ... [a]dvertising injury' caused by an offense committed in the course of advertising your goods, products or services," (*id.* at I(B)(1)(b)(2)).

RBI attempts to argue that—because the Excess Policy is arranged and phrased differently than the Primary Policy, and be-

---

**1.** Notably, the insureds in *White* did not even make the argument that the underlying copyright infringement claims against it should be covered under their insurance policy. *Id.* at 953 ("[n]one of these [claimants] contend that the policy coverage should extend to claims for copyright infringement").

**2.** In addition, the authority upon which RBI relies does not support RBI's argument. In *Faircloth v. A.L. Williams & Assocs., Inc.*, 206 Ga.

App. 764, 426 S.E.2d 601 (1992), the court held that, for purposes of conversion, money is a tangible asset only "if this money is in fact owed by contract to [plaintiff], and if it was represented by some form of 'receipt' or 'certificate,' " *id.* at 767, 426 S.E.2d 601. Having alleged neither of these prerequisites, RBI cannot seriously even begin to argue that the *Corel* plaintiffs' business losses constitute tangible property.

cause the Excess Policy's language requiring advertising activity is stated in more mandatory terms (i.e. "such offenses *must* be committed in the course of advertising" (emphasis added))—only the Excess Policy absolutely requires copyright infringement to have been committed in the course of advertising in order to extend coverage. This position is untenable. The plain language of the Primary Policy unequivocally states that coverage for advertising injury applies only for offenses committed in the course of advertising. The slight differences in structure and language of the two policies does not alter this fact. As the "course of advertising" requirement is clear and unambiguous, the court can construe it only to mean what it says on its face.

█ In light of this finding, the remaining issue is whether the offenses alleged in the *Corel* suit occurred in the course of RBI's advertising. Aetna argues that the duplication of its software onto RBI's computers cannot be construed as having occurred during the course of any advertising activity. RBI claims, on the other hand, that two of the three computer programs allegedly pirated were utilized extensively in the course of its so-called "Window to Paradise" advertising campaign, and thus that its alleged offense was indeed committed in the course of advertising.

█ Again, RBI's argument must fail. In construing insurance policies providing coverage for advertising injury committed in the course of advertising, the overwhelming majority of courts which have addressed the issue have held that there must be a causal connection between an insured's advertising and the alleged injury. *See Simply Fresh Fruit, Inc. v. Continental Ins. Co.,* 94 F.3d 1219, 1221 (9th Cir.1996) ("any of the policy's enumerated advertising injuries must be caused by [the insured's] advertising"), *cert. denied,* —— U.S. ——, 117 S.Ct. 388, 136 L.Ed.2d 304 (1996); *St. Paul Fire & Marine Ins. Co. v. Advanced Interventional Systems,* 824 F.Supp. 583, 585 (E.D.Va.1993) ("the injury caused by predicate offense must result from advertising"), *aff'd,* 21 F.3d 424 (4th Cir.1994); *Advance Watch Co., Ltd. v. Kemper Nat'l Ins. Co.,* 99 F.3d 795, 806 (6th Cir.1996) ("[t]he policy therefore requires some nexus between the ground of asserted liability and the insured's advertising activities"); *The Home Ins. Co. v. American Nat'l Can Co.,* No. 97–C–0975, 1997 WL 467180, at *2 (N.D.Ill. Aug.12, 1997) ("there must be a proximate causal connection between the advertising activity and the advertising injuries to trigger insurance coverage"). In other words, an insured's advertising must have been the cause of whatever injury is alleged in the underlying suit.

RBI alleges that the need to conduct an ad campaign induced it to purchase and copy the software in question and thus that its advertising caused it to commit the underlying offense. In support of its argument, RBI relies exclusively on *Irons Home Builders, Inc. v. Auto–Owners Ins. Co.,* 839 F.Supp. 1260 (E.D.Mich.1993), in which the court granted partial summary judgment in favor of an insured who was being sued for copyright infringement in connection with architectural plans which the insured had copied and used in designing and building three houses. *Irons Home Builders,* however, is not as enlightening as RBI claims it to be. Apparently, the court in *Irons Home Builders* had no occasion to question the existence of the requisite causation between advertising activity and injury, because the insurance company conceded that "the two homes ... were constructed in the course of advertising activity," *id.* at 1266. Even had the court done so and found the required causation, the facts were different enough from those in the instant case such that this court could reach a different conclusion without standing at odds with *Irons Home Builders;* there, the homes themselves, physical manifestations of the very plans which had been pirated, constituted advertisement for the insured company, whereas here, the pirated software was not physically manifested in any advertising.

What's more, most courts which have been faced with the issue on facts similar to those in *Irons Home Builders* have held that the requisite causation has not been alleged. *See, e.g., Simply Fresh Fruit,* 94 F.3d at 1222 (use of opponent's patented processes in conjunction with promotional activities does

not allege sufficient causation); *St. Paul Fire & Marine*, 824 F.Supp. at 586 (fact that sale giving rise to patent infringement suit would not have occurred but for insured's advertising is insufficient to fulfill causation requirement); *Advance Watch*, 99 F.3d at 806 (advertising product which allegedly infringed on opponent's trademark insufficient to render trademark infringement claim an advertising injury); *Sentry Ins. v. R.J. Weber Co.*, 2 F.3d 554, 556 (5th Cir.1993) (publishing, distributing, and selling opponent's copyrighted works does not bear sufficient causal connection to sustain coverage for advertising injury). Thus, even if the facts here are not sufficiently distinguishable from those in *Irons Home Builders,* the court finds the reasoning in the above cases to be more persuasive.[3]

In short, RBI's argument proves too much. Finding causation between advertising and injury from such a tangential relationship as that allegedly present in this case would open up Aetna to far-reaching obligations which neither it nor RBI could likely have countenanced at the time the policy was issued. If the *Corel* suit is held to have alleged advertising injury, "then a great many acts which have at best a remote relationship to advertising content would be covered," *The Home Ins.*, 1997 WL 467180 at *3. *See also Advance Watch,* 99 F.3d at 806 (finding of requisite causation would "render[ ] the coverage applicable with respect to most claims against an insured business").

For the foregoing reasons, the court finds that Aetna was not obligated to defend and is not obligated to indemnify RBI in connection with the *Corel* suit.

Accordingly, Defendants' motion for summary judgment [# 4] is GRANTED; Plaintiff's cross-motion for summary judgment [# 12] is DENIED; and Defendants' motion for oral argument [# 19] is DISMISSED AS MOOT.

---

**3.** RBI's argument that cases involving patents and trademarks are not apposite to the instant copyright suit is unconvincing. The requisite level of causation between advertising and alleged injury should not vary with the particular type of intellectual property in question, and thus these cases are very much on point.